STUTELBERG v PRACTICAL MANAGEMENT COMPANY

1. CONTRACTS—LANDLORD AND TENANT—SECURITY DEPOSITS—CLEAN-
ING FEES—STATUTES—EXPECTATION OF REFUND.

Nonrefundable cleaning fees which the parties to a lease or
rental contract knowingly and willingly stipulate will be nonre-
turnable are not a security deposit within the meaning of the
statute regulating security deposits; the statute protects those
sums paid by the tenant to the landlord of which he has an
expectation of refund but does not limit or prohibit a present
payment for a contemporaneous or future purpose when the
parties agree such payment is not refundable (MCLA 554.601–
554.616; MSA 26.1138[1]–26.1138[16]).

2. ACTION—DISMISSAL OF DEFENDANT—PLAINTIFFS—INDIVIDUAL
CLAIM.

A defendant is properly dismissed from a cause of action where
no party plaintiff has any individual claim or relationship
against him.

3. ACTION—CLASS ACTION—NUMEROUS MEMBERS—NOTICE—RESPONSE
—SIMILAR CLAIMS—COUNTERCLAIMS—FEASIBILITY.

Class actions may be maintained where the possible members of
the class are so numerous that it would be impractical to bring
them before the court and after proper notice is given to
members of the class with appropriate response which would
fairly insure adequate representation; such actions may not be
maintained where the claims are not sufficiently similar or
where too many individual factual situations including possible
counterclaims would be presented to feasibly permit a broad
class action.

4. ACTION—CLASS ACTION—INDIVIDUAL ACTION—ASSERTIONS.

A plaintiff may not accomplish by class representation that which
he cannot assert as a cause of action in individual litigation.

REFERENCES FOR POINTS IN HEADNOTES
[1] 49 Am Jur 2d, Landlord and Tenant § 652.
[2] 24 Am Jur 2d, Dismissal, Discontinuance, and Nonsuit § 41.
[3, 4] 1 Am Jur 2d, Actions § 100 *et seq.*

Appeal from Wayne, Blair Moody, Jr., J. Submitted June 7, 1976, at Detroit. (Docket No. 24058.) Decided July 21, 1976. Leave to appeal denied, 398 Mich 804.

Complaint by Gregory L. Stutelberg, and others similarly situated, against Practical Management Company, and others, seeking the return of cleaning and janitorial fees paid under rental and lease contracts. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Frimet, Goren & Bellamy* (by *Alan G. Gilchrist*), for plaintiffs.

*Travis, Warren, Hammond, Ziegelman & Burgoyne* (by *Anthony Trogan, Jr.*), for defendant Practical Management.

*Barris, Sott, Denn & Driker,* (by *Stephen E. Glazek*), for defendants Sobel and Willer and Sullivan-Smith Realty.

*Brennan & Bibeau,* for Estates, Inc.

*Katz, Victor & Yolles,* for All State Management.

*Forsyth, Campbell, Vandenberg, Clevenger, Bishop & Tryand* (by *Melinda Morris*), for Pheasant Run Management.

*Greenberg, Greenberg & Peterman,* for Standard Construction.

Amicus Curiae:

*Robert Reed,* for Ann Arbor Tenants Union.

Before: J. H. GILLIS, P. J., and T. M. BURNS and W. VAN VALKENBURG,* JJ.

PER CURIAM. Judge Blair Moody, Jr., handed down the following written opinion in this cause:

"OPINION

I

"INTRODUCTION

"Plaintiffs bring this cause purportedly representing a class compiled of tenants past and present who have entered into landlord-tenant relationships with the defendants subsequent to April 1, 1973, and who have been charged non-refundable fees for purposes of carpet cleaning, drapery cleaning or janitorial services. Plaintiffs claim that lease requirements pertaining to non-refundable fees required to be paid by tenants at the inception of or prior to the tenancy are invalid under [1972 PA 348], effective April 1, 1973, MCLA 554.601–554.616 [MSA 26.1138(1)–26.1138(16)].

"Plaintiffs claim that each is a member of the aforementioned class and that all the members of the class are great in number and, therefore, impractical to bring them all before this Court. Plaintiffs assert that the contractual agreement between the plaintiffs and each of the defendants involve a common question of law, *i.e.,* the validity of the non-refundable cleaning fees under the conditions required.

"Two different fact situations are presented. In the first, the fee is used for services performed prior to the tenants taking possession. In the second, the fee is used for services austensibly *[sic]* performed after the tenant has vacated.

"It is claimed by plaintiffs that any non-refundable fee is illegal in contravention to the aforementioned Act in that the non-refundable cleaning fee is an invalid attempt to waive plaintiffs rights under the Act and a method to circumvent the legislative policy requiring

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

landlords to invoke judicial relief in order to obtain compensation for maintenance and repair of their leasehold properties.

"Plaintiffs seek a judgment that the non-refundable cleaning fee or janitorial fee be declared invalid and illegal in violation of [1972 PA 348], or in the alternative, a declaration that such is contrary to public policy. Plaintiffs further seek to require that defendants refund all such cleaning fees, plus interest, paid to defendants by members of the plaintiffs' purported class, as well as pay all individual plaintiffs who have terminated their tenancy with defendants not seeking judicial relief within 45 days of termination of the tenancy double the amount of the security deposit retained computed with the non-refundable fee as a part of the security deposit. Plaintiffs also seek an injunction requiring defendants to refrain from charging non-refundable cleaning fees in the future.

"Defendants have brought motions for summary judgment claiming numerous reasons including: (1) That plaintiffs have failed to state a cause of action as there is no issue of material fact requesting that defendants be entitled to judgment as a matter of law on the basis that the non-refundable cleaning fee is not 'security deposit' within the meaning of the Act or if so considered, does not exceed the limit of security deposit required under the Act and no cause will arise until termination of tenancy and refusal to refund said deposit is made; (2) That plaintiffs may not bring a class action as such does not meet the requirements of the court rules pertaining to class actions; (3) That in the case of some defendants, the fee is charged for contemporaneous service and, accordingly, is not a security deposit; (4) In the case of two defendants, that the venue chosen is inappropriate; (5) That as to two other defendants, there is no plaintiff who entered into a contractual relationship with such defendants and, accordingly, should not be included in the litigation as the court cannot adjudicate the rights of absent parties and no contractual controversy exists between the plaintiffs and these two defendants; (6) That plaintiffs have an adequate remedy at law for damages and that irreparable harm to any party is not present, and (7) The claim

of plaintiffs is contrary to the single object statutory standard.

"In response, plaintiffs request summary judgment in their favor claiming defendants have admitted sufficient facts to render a determination that contracts regarding non-refundable cleaning fees are void in violation of the landlord-tenant statute.

II

"FACTUAL BACKGROUND

"To appropriately assess the issues presented, an analysis of the relationships between individual plaintiffs and defendants is required as obtained from the pleadings:

"1. Gregory Stutelberg and Practical Management Company:

"Gregory Stutelberg entered a one year lease ending April 15, 1974, with Practical Management Company located in Oakland County.

"Stutelberg paid Practical Management Company the following sums: $260.00 monthly rental; $260.00 security deposit; and $75.00 for 'carpet and drapery cleaning charge.'

"The cleaning charge was 'not returnable' and was 'in full payment for the cleaning of the carpets and drapes' when the apartment is vacated.

"The lease further states, 'payment of above fee for the cleaning of carpets and drapes does not relieve the tenant of the obligation of keeping the carpeting and drapes that are provided in the above apartment in good condition and any damages to same will be charged to tenant.'

"2. Donald Stevens and All State Management Company, Inc.:

"All State leased an apartment to Donald G. Stevens and his wife Faith, located in Ingham County, Michigan, for a one year term commencing September 1, 1973, for a monthly rental of $225.00. Concurrently Stevens paid All State a $175.00 security deposit and a $40.00 non-refundable fee to cover cleaning of carpets in the leased premises.

"All State immediately cleaned the carpeting and

used the carpet fee for that purpose prior to plaintiff taking possession. All State does not engage in any business in Wayne County.

"3. Frederick J. Bennie and Estates, Inc.:

"Mr. Bennie entered into a lease agreement with Estates, Inc., on or about August 4, 1973. Pursuant to said lease agreement, Mr. Bennie paid a monthly rental of $215.00, a security deposit of $265.00 and a 'cleaning charge for range, refrigerator and carpets' non-refundable of $50.00 with said cleaning to be accomplished upon termination of the lease.

"4. Raymond McQuillan and Bell Development Co.:

"Default of defendant Bell Development Company was entered March 5, 1974. An appearance in behalf of Bell Development Company by counsel was filed March 22, 1974. No further pleadings or orders have been found in the file relative to this defendant. Plaintiff McQuillan claims that it entered a lease agreement with defendant Bell Development Company on June 1, 1973, and was charged a non-refundable janitorial fee in the amount of $40.00 for the purpose of cleaning carpets upon the termination of the tenancy.

"5. Mona Hass and Pheasant Run Management:

"Mona Hass is a former tenant of Pheasant Run Management Company. Her lease was entered into on June 1, 1973, and terminated on November 15, 1973, at her request. The lease agreement called for $185.00 per month with a $140.00 security deposit and a cleaning fee in the amount of $60.00 to be paid for the purpose of cleaning the apartment upon termination of the tenancy. Mona Hass would be in the category of a former tenant of the landlord at the time the action commenced.

"Pheasant Run is a co-partnership located and operating exclusively in Washtenaw County. Plaintiff apparently resides in Washtenaw County.

"6. Paul Johnson:

"Defendant Paul Johnson neither has nor had contractual relationship, express or implied, with any of the plaintiffs named herein. His principal offices are in the City of Birmingham, Oakland County, Michigan.

"7. Craig Senzik and Sobel-Willer Company:

"Plaintiff Craig Senzik entered into a lease agreement with defendant Sobel-Willer about November 1, 1973. He was charged a non-refundable janitorial fee for the purpose of cleaning the apartment prior to occupancy of the tenancy in the amount of $50.00.

"The rental rate under the lease was $149.00 per month. Plaintiff Senzik also paid at the commencement of the lease a security deposit of $149.00 along with the first month's rent.

"8. Dave Tuffley and Standard Construction Company:

"Plaintiff Tuffley became a tenant of the Jean Rivard Apartments with Standard Construction Company under a lease agreement dated February 12, 1972, for a one year tenancy for a rental of $220.00. The said tenant continued as a tenant at the expiration of the initial year and continued as a month to month tenant at the same monthly rental until February 1, 1974.

"Then, plaintiff Tuffley entered into a lease agreement providing for a monthly rate of $235.00 with a security deposit of $270.00. In addition, the tenant then executed an 'Agreement Pertaining to Lease' which provided for the payment to the landlord the sum of $60.00 for 'the cost of cleaning and the costs of decorating the rented premises.' The $60.00 fee was 'not refundable under any circumstances and belongs to the landlord unconditionally.'

"The lease agreement further stated: 'Said fee shall not apply or be a credit against or on any security deposit, damages or rental, the landlord hereby reserving any and all rights or remedies it may have under the Lease Agreement and or the Security Deposit Agreement with this regard to retention of said fee.'

"It was stated by defendant Standard that the $60.00 fee 'will relieve you of the burdens of cleaning your apartment, appliances and carpeting (if our property) when you move * * * .'

"Mr. Tuffley is a lawyer.

"9. Sullivan Smith Realty Company:

"No plaintiff alleges any contractual relationship to or with defendant Sullivan Smith Realty Company.

III

" 'Security Deposit'

"Defendants suggest many differing reasons for this Court to grant a motion for summary judgment of dismissal. Plaintiffs in turn request summary judgment in their favor as a matter of law. As reflected, the issues presented include the applicability of a class action, severence, venue, the absence of an actual controversy and several others.

"After considerable study and review of all briefs and careful reading of the statute and in an attempt to appropriately reflect the intent of the legislature pertaining to the subject Landlord-Tenant Public Act of 1972 No. 384, this Court will grant summary judgment as a matter of law in favor of defendants.

"It is the conclusion of this Court that the various charges termed, 'non-returnable carpeting and drapery cleaning charge', 'non-refundable janitorial fee', 'non-refundable carpet cleaning fee', and the like, which have been paid by various plaintiffs to various defendants are not a 'security deposit' within the meaning of the Act, nor are they otherwise governed by any provision of said Act. Accordingly, the complaint does not state a claim upon which relief can be granted.

"Significant portions of the Act are as follows:

"Section 1(e):

" ' "Security deposit" means a deposit, in any amount, paid by the tenant to the landlord or his agent to be held for the term of the rental agreement, or any part thereof, and includes any required prepayment of rent other than the first full rental period of the lease agreement; any sum required to be paid as rent in any rental period in excess of the average rent for the term; and any other amount of money or property returnable to the tenant on condition of return of the rental unit by the tenant in condition as required by the rental agreement. Security deposit does not include an amount paid for an option to purchase, pursuant to a lease with option to purchase, unless it is shown the intent was to evade this act.'

"Section 2:

" 'A landlord may require a security deposit for each

rental unit. A security deposit shall be required and maintained in accordance with the terms of this act and shall not exceed 1-1/2 months' rent.'

"Section 5:

" 'For the purposes of this act and any litigation arising thereunder, the security deposit is considered the lawful property of the tenant until the landlord establishes a right to the deposit or portions thereof as long as the bond provision is fulfilled, the landlord may use this fund for any purposes he desires.'

"Section 6:

" 'The requirements of this act may not be waived by the parties to a rental agreement except as specifically provided herein.'

"Section 7:

" 'A security deposit may be used for the following purposes:

" '(a) Reimburse the landlord for actual damage to the rental unit or any ancillary facility that are the direct result of conduct not reasonably expected in the normal course of habitation of a dwelling.'

" '(b) Pay the landlord for all rent in arrearage under the rental agreement, rent due for premature termination of the rental agreement by the tenant and for utility bills not paid by the tenant.'

"The threshold issue presented to this Court is whether a so called 'non-returnable fee' is a 'security deposit' under the Act.

"First, it is the conclusion of this Court an agreement between landlord and tenant for a non-returnable cleaning fee when the cleaning or service contracted for is performed prior to commencement of the lease term falls clearly outside of the perimeters of the subject Act. Such arrangement calls for contemporaneous or immediate completion of the service contracted for. The sum paid is then applied for such service. In no way is the fee held by the landlord either as a deposit for any part of 'the term of the rental agreement' or as a sum paid 'in any rental period' or under any of the examples as set forth in the definition of security deposit in Section 1(e) of the Act.

"Accordingly, claims against the named defendants

All State Management and Sobel-Willer and any defendant whose agreements called for completion of this cleaning service or other activities prior to occupancy have no basis in law and summary judgments may be granted in behalf of these defendants as plaintiffs state no cause of action upon which relief can be granted under the Act.

"What appears to be a closer question arises when the so called 'non-returnable cleaning fee' or fee for some like purpose is paid for services to be performed in the future, usually upon termination of the lease. The question then presented is whether the statute limits a tenant from agreeing to unequivocally part with money at the outset of a leasehold agreement for some purpose or service to be rendered by the landlord at the termination of the lease with no anticipation of a refund of the payment made.

"This Court concludes that the definition of 'security deposit' in the subject Act relates only to sums paid in various ways by the tenant to the landlord to afford the tenant protection when he has an expectation of refund of such payment. The Act does not limit or prohibit a present payment for a contemporaneous or future purpose when the parties agree such payment is not refundable.

"There were a number of options presented as to how the definition of a 'security deposit' as found in Section 1(e) of the Act should be interpreted.

"Viewing the verbiage used in the statute, a 'security deposit' means, 'a deposit * * * to be held for the term of the rental agreement, or any part thereof and includes:

" '1. Any required prepayment of rent other than the first full rental period of the lease agreement;

" '2. Any sum required to be paid as rent in any rental period in excess of the average rent for the term; and

" '3. Any other amount of money or property returnable to the tenant on condition of return of the rental unit by the tenant in condition as required by the rental agreement.'

"In *Davidson v Secretary of State,* 351 Mich 4 [87 NW2d 131] (1957), this court stated:

" 'We cannot deny to the word "including" its natural meaning. It connotes the idea that the items [* * *] immediately thereafter enumerated are included within the meaning of the short preceding definition.'

"Black's Law Dictionary defines 'deposit' when used in the sense as reflected by the statute:

" 'A naked bailment of goods to be kept for the depositor without reward and to be returned when he shall require it. * * * Also, money lodged with a person as an earnest or security for the performance of some contract, to be forfeited if the depositor fails in his undertaking * * * .'

"A plain reading of this statutory definition reflects that a 'security deposit' is a sum in excess of the normal rent payment obtained by the landlord from the tenant and held as security to give assurance the tenant will fulfill obligations under the rental agreement as permitted by statute. The sum must be returned to the tenant if the tenant fulfills his obligations under the agreement or the landlord fails to follow the statutory prerequisites to retain the sum. On the other hand, the sum or part thereof, may be kept by the landlord if the tenant fails to perform his obligations and the landlord does follow statutory prerequisites for keeping the deposit at the termination of the lease. The underlying meaning of the term 'deposit' when used in the statute reflects a sum held as security that is returnable to the owner.

"The three phrases set forth in the statutory definition as being 'included' as a security deposit were inserted to bring within the definition and provide control of transactions when a landlord secures possession of and holds an excess of tenant's money over normal rental payments when such sums are possibly returnable upon the tenant fulfilling all aspects of the lease contract.

"The statutory definition included as a first example is 'any required prepayment of rent other than the first full rental period of the lease agreement.' Here the legislature stated its intent to control by including as a

security deposit monies obtained by the landlord at the outset of the transaction which were payments in advance for future rent. Thus, the landlord cannot obtain a prepayment of rent which sum would be returnable to the tenant upon his making all future rental payments without complying with statutory requirements of the subject Act.

"Such prepayment of rent, however, is not the same as a non-refundable fee. The rent prepayment is an extra sum held by the landlord which could be applied on future rent, or used to pay for premise damage or returned to the tenant. In no way has the tenant by making such rent prepayment agreed that such sum should not be returned. As for the non-returnable fee, the tenant has agreed that it has no claim to such sum.

"The second example: 'any sum required to be paid as rent in any rental period in excess of the average rent for term * * * ', has similar import. Having included prepayments of rent at the outset of the rental period, the legislature obviously sought to control and include as a security deposit extra sums required to be paid 'as rent' by the tenant 'in any rental period' which would be held by the landlord and possibly applied to damage occasioned by the tenant, obligations owed by the tenant or returned to the tenant as the rental period unfolded. This language is not surplusage.

"It is to be noted the third 'included' example of a security deposit as found in Section 1(e) of the Act states: ' * * * and any *other* amount of money or property returnable to the tenant.' The term 'other' underlines the position that the legislature throughout the definition was referring to deposits 'held for the term of the rental agreement [* * *] and [* * *] returnable to the tenant.'

## IV

### "THE LEGISLATIVE SCHEME

"A view of the totality of this Act and the legislative scheme involved points to a desire on the part of the legislature to control the receipt, safe keeping and disbursements by the landlord of tenant payments returnable to the tenant. The statute is not directed

towards contractual provisions where the landlord and the tenant agree the payment was not refundable.

"A one time non-refundable fee is not a sum agreed upon by the parties to be held to assure the performances by the tenant that the apartment or carpeting or drapes be cleaned. This is a sum contracted between the parties at the outset and understood by both parties to cover such cleaning cost not to be returnable under any circumstances. It is clearly money that promptly upon payment belongs to the landlord. The tenant, in effect, agrees that he will pay for the cleaning or the service offered and that, accordingly, the money is fully earned when paid by the landlord.

"A review of memoranda by the Legislative Service Bureau, the House Democratic Caucus, the State Affairs Committee and to the Executive Office by the Attorney General analyzing this bill reflected the legislative intent to give relief to the tenant and place the burden on the landlord to follow a number of conditions before able [sic] to assert a right to keep money held as security for purposes allowed under the statute (see Reply Brief of defendant Estates Incorporated, filed February 20, 1974). The underlying theme relates to the protection of earnest money provided by the tenant in several possible ways which should be returned upon the tenant complying with lease requirements.

"The grammatical analysis as suggested by amici does not comport with the general legislative scheme of the Act. Logically the version of counsel for Estates Inc., is as tenable. As was reflected in *Magreta v Ambassador Steel Co,* 380 Mich 513 [158 NW2d 473] (1968):

" 'In statutory construction we are bound to determine legislative intent. In the exercise of that duty we are obligated to utilize all the tools of the historic judicial method. We feel we overemphasized the grammatical analysis to the prejudice of other well-recognized and long-established methods.'

"This Court believes its function appropriately reflected in *Klug v Auditor General,* 194 Mich 41 [160 NW 589] (1916), where the Court stated:

" 'It is a fundamental rule of construction, and one well established by this court, that in construing the

terms of a statute the real test to be applied is, [w]hat was the intention of the legislature? If we are able to ascertain from a reading of the entire statute what such intention was, such a construction should be given the statute as to be in harmony therewith. [Citations omitted.] Relator's position is based largely upon the punctuation and upon rules of grammatical construction, and while these rules have been applied for the purpose of ascertaining the meaning of a statute, nevertheless they must yield to a clearly disclosed legislative intention.'

V

"Applicability

"The landlord-tenant agreements reflected by pleadings in this case do not call for a deposit 'to be held for the term of the rental agreement' including a 'prepayment of rent.' It is not a sum paid as 'rent' and paid 'in any rental period' in excess of the average rent of the term. Nor, is it a sum 'returnable to the tenant on condition of returning of the rental unit' as required by agreement. Such payments are not considered by the parties to be a deposit in the ordinary and defined sense of that term.

"Such sum as a prepayment for a future service which the parties themselves knowingly and willingly stipulate such shall not be returnable or, in effect, used as a security deposit.

"The Act is primarily aimed to protect the tenant from the landlord surreptitiously usurping substantial sums held to secure the performance of conditions under the lease. It cannot be claimed here that the landlord misleads the tenant or takes advantage of the tenant by withholding funds that the tenant would have some claim of title or interest.

"There is no deception. If the landlord expects the tenant to specifically pay for carpet cleaning or some other service, the Act requires, in effect, that such be openly contracted. The misleading practice of landlords obtaining large security deposits while charging a lesser monthly rate than their competitors and then unilaterally withholding a good portion of this deposit for unsuspected reasons is halted by the Act. The crux of

the matter is that the effect of the Act now requires any such fee to be openly charged and agreed upon. As with the firm known monthly rental charge, the supply and demand of the market will limit any firm known non-returnable fee. Whereas the statutory ceiling placed upon 'security deposits' limits the amount of funds a landlord can hold in abeyance to be subject to application for the limited purposes the Act permits.

"The non-returnable fee is agreed by covenant openly arrived at, calling for the payment of a sum which does not fall within the definition of a security deposit. Thus, the requirements of the Act are not waived by the parties, which is prohibited under Section 6 of the Act, as such contractual relationship does not fall under the Act in the first place. If the lease between the parties calls for an arrangement which amounts to a 'security deposit' as defined by the Act, then any condition not in compliance with the Act would be an inappropriate waiver.

"If a tenant paid all rent payments when due, all utility bills and caused no actual damage to the unit not reasonably expected by normal habitation, any extra sum deposited as a deposit to be held for the term of the agreement, or any extra sum held as a prepayment of rent beyond the first rental period, or any sum paid as rent in any rental period in excess of the average rent for the term would have to be returned to the tenant. Such sum would be, in fact, tenant's money and under the Act is declared to remain lawful money of the tenant although held by the landlord.

"However, as before, if the tenant paid all monthly rent when due, all utility bills and caused no actual damage to the unit beyond normal habitation, the extra sums previously paid as a 'non-returnable fee' could not be returned to the tenant under any circumstances. Such sum would be the landlord's under any and all circumstances.

"The tenant could have no expectation that this sum or a part thereof should be returned. It is not a 'security deposit.' The Act does not prohibit or limit such an arrangement between the landlord and tenant.

"The function of a non-returnable carpet or janitorial

fee is not to secure the performance of the rental agreement by the tenant. It would be an exercise in futility to interpret such fee otherwise. For if such non-refundable fee was intended by the legislature to be a security deposit, it would cause needless steps on the part of the landlord to follow through with the conditions of the Act to obtain payment which it has the contractual right to receive in any event.

"The tenant can present no defense to payment of this cleaning or janitorial fee as he agreed to pay and assume this responsibility. The Act cannot offer protection to the tenant as the tenant in the first instance agreed to part with the fee for good.

"If a view were to be adopted interpreting the non-returnable fee to be a security deposit, the result would only cause the landlord to follow the statutory conditions precedent by giving the notices and follow the procedures to secure the sum contracted for. The only way the fee could be returned would be if the landlord failed to follow the statutory steps.

"Such view would necessarily cause the 'fee' to be interpreted as 'rent' under Section 1(e). Likewise, the 'fee' would be 'rent' and would be required to be paid by the tenant under Section 7(b) of the Act. The tenant could not be protected from the inappropriate retention of its money as such could not take place. Such interpretation would only cause a windfall to tenant when and if the landlord failed to follow the statutory prerequisites of retaining such sum already contracted to be the landlord's under any circumstances. This Court does not believe such a result was intended by the legislature.

"Accordingly, it is held that plaintiffs do not state a cause of action with respect to their claims which arise out of an agreement calling for the payment of non-refundable cleaning or janitorial fees' for services to be performed at the termination of the lease.

## VI

### "OTHER ISSUES

"In view of this Court's holding that plaintiffs have not stated a claim for which relief could be granted, a

lengthy analysis of other issues presented is not necessary. However, for future guidance if such is deemed necessary, this Court will determine several of the other issues presented.

"It has been determined that where any party plaintiff has no individual claim or relationship against any named defendant, such defendant is dismissed from this cause of action. Thus, Sullivan Smith Realty Company and Paul Johnson, due to the absence of a contractual controversy, would be granted judgments in their favor for such reason.

"As for the remaining parties, this Court would permit class actions to be maintained as separate actions, each class representing all the tenants past and present subsequent to April 1, 1973, against their own landlord, provided the possible members of the class are so numerous that it would be impractical to bring them before the Court and after proper notice is given to members of the class with appropriate response which would fairly insure adequate representation.  ·

"This Court concludes that the foregoing cause does not amount to sufficient similar claims of an entire class of claimants. Furthermore, a plaintiff may not accomplish by class representation that which he cannot assert [as] a cause of action in individual litigation. *Weiner v Bank of King Prussia,* [358 F Supp 684 (ED Pa, 1973)], *LaMar v H & B Novelty & Loan Co,* 489 F2d 461 (CA 9, 1973), *Kauffman v Dreyfus Fund, Inc,* 434 F2d 727, 734 (CA 3, 1970). At the outset, too many individual factual situations including possible counterclaims would be presented to feasibly permit a broad class action as originally contemplated.

"Regarding the venue issue, as the various actions would be severed, the venue selected in the case of Pheasant Run Management and All State Management Company, Inc., would be improper. Those cases would be remanded to their respective proper circuits.

"It would be this Court's determination that no cause would be dismissed due to this Court lacking jurisdiction on the basis that the aggregated claims fail to exceed the jurisdictional amount until this Court would determine whether such action may be certified as a

class suit. It would then examine each permitted class action.

"Further, it would be this Court's contemplation that upon proper motion some cases having identical or similar ancillary questions of fact may be joined under the permissive joinder rule for determination of such facts.

"As stated heretofore, this Court's previous reflection of its determination regarding the 'other issues' presented is for future guidance only if deemed to be necessary.

"As this Court has held that plaintiffs have no basis for relief in the first instance under any of the factual assertions made, an order dismissing the cause and the claims against each of the defendants may be presented with prejudice. No costs."

We adopt his opinion as our own and affirm. Costs to appellees.