PENOKIE v COLONIAL TOWNHOUSES COOPERATIVE, INC

Docket No. 70053. Submitted July 16, 1984, at Lansing.—Decided February 19, 1985. Leave to appeal applied for.

Plaintiff, Kenneth Penokie, a shareholder-member of defendant, Colonial Townhouses Cooperative, Inc., paid $627.25 towards the purchase of a "membership certificate", also referred to as the "value-of-occupancy agreement". He later paid $100 for the privilege of signing a "subscription agreement" which brought the total membership fee to $727.25. Plaintiff also signed an "occupancy agreement" whereby he agreed to pay monthly "carrying charges" of $150 to cover his proportional share of the cooperative's operating expenses. After plaintiff moved out, defendant determined that various charges exceeded $727.25 and refused to tender the membership fee to plaintiff. Plaintiff brought an action in 54-A District Court against defendant seeking damages under the landlord-tenant relationship act. The court granted a judgment for defendant. Plaintiff appealed, and the Ingham Circuit Court, Ray C. Hotchkiss, J., reversed, holding that the $100 subscription agreement payment was not a "security deposit" under the act but that the $627.25 membership certificate payment was. Defendant appealed by leave granted. *Held:*

The landlord-tenant relationship act does not apply to cooperative housing associations. There was no "security deposit" under the act.

Affirmed in part and reversed in part.

LANDLORD AND TENANT — COOPERATIVE HOUSING ASSOCIATIONS — LANDLORD-TENANT RELATIONSHIP ACT.

The landlord-tenant relationship act does not apply to cooperative housing associations (MCL 554.601 *et seq.;* MSA 26.1138[1] *et seq.*).

*Stephen J. St. Amant,* for plaintiff.

*Jeffrey P. Ray,* for defendant.

REFERENCES FOR POINTS IN HEADNOTE
15A Am Jur 2d, Condominiums and Cooperative Apartments § 79.
49 Am Jur 2d, Landlord and Tenant § 424.

Before: DANHOF, C.J., and D. E. HOLBROOK, JR., and C. W. SIMON, JR.,* JJ.

DANHOF, C.J. Defendant appeals by leave granted on September 22, 1983, from an order of the circuit court dated December 3, 1982, rendering judgment in favor of plaintiff in the amount of $1,254.50. This decision was based on the landlord-tenant relationship act (LTRA), MCL 554.601 *et seq.;* MSA 26.1138(1) *et seq.* The issue of first impression with which we are presented here is whether the LTRA applies to cooperative housing associations. We hold that it does not.

Plaintiff, a shareholder-member of Colonial Townhouses Cooperative, Inc., paid $627.25 over a period of approximately one year towards the purchase of a "membership certificate", also referred to as the "value-of-occupancy agreement". He later paid $100 for the privilege of signing a "subscription agreement", which brought the total membership fee to $727.25. Plaintiff also signed an "occupancy agreement" whereby he agreed to pay monthly "carrying charges" of $150 to cover his proportional share of the cooperative's operating expenses. After plaintiff moved out, defendant determined that various charges exceeded $727.25 and refused to tender the membership fee to plaintiff. After a bench trial, the district court ruled that the fee was not a security deposit under the LTRA. On appeal to circuit court, the district court was reversed, and it was held that the $100 paid for the subscription agreement was exempt from the LTRA, but that the $627.25 was subject to the LTRA. The parties stipulated to damages in the amount of $627.25. Judgment was ultimately rendered in the amount of $1,254.50 based on the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

double-damages provision of MCL 554.613(2); MSA 26.1138(13)(2).

Defendant argues that, because a cooperative is significantly different from the traditional landlord-tenant situation, the LTRA does not apply. Moreover, Colonial is incorporated under the cooperative corporation act (MCL 450.98 *et seq.;* MSA 21.99 *et seq.),* and plaintiff exercised rights similar to ownership, helping govern the cooperative as a board director. Defendant further points out that the Internal Revenue Code allows a cooperative shareholder to deduct a portion of his payment of the cooperative's mortgage as an incident of ownership, 26 USC 216(b)(1), and that the cooperative's nonprofit status does not bespeak a traditional landlord-tenant relationship. Finally, defendant cites various provisions in the bylaws and occupancy agreement as further indicia of ownership.

Plaintiff, on the other hand, argues that the "security deposit" provisions relate to money paid and are to afford a tenant protection if he has an expectation of a refund. According to plaintiff, the deposit here was held to assure that the tenant fulfilled the rental obligations, and that, in Michigan, cooperative shareholders are viewed as tenants and the real estate as being owned by the cooperative corporation. Furthermore, plaintiff maintains that the occupancy agreement clearly contemplates a landlord-tenant type relationship and that, although defendant argues that such relationship only applies with respect to the summary proceedings act, MCL 600.5701 *et seq.;* MSA 27A.5701 *et seq.,* this type of selective application has been specifically condemned in Michigan.

The LTRA provides the following definitions:

"(a) 'Rental unit' means a structure or part thereof used as a home, residence or sleeping unit by a single person or household unit, or any grounds, or other

facilities or area promised for the use of a residential tenant *and includes, but without limitation, apartment units, boarding houses, rooming houses, mobile home spaces and single and 2-family dwellings.*

"(b) 'Rental agreement' means all agreements which establish or modify the terms, conditions, rules, regulations or any other provisions concerning the use and occupancy of a rental unit.

"(c) 'Landlord' means the owner, lessor or sublessor of the rental unit or the property of which it is a part *and, in addition, means a person authorized to exercise any aspect of the management of the premises,* including a person who, directly or indirectly, acts as a rental agent, receives rent or any part thereof, other than as a bonafide purchaser, and who has no obligation to deliver the whole of such receipts to another person.

"(d) 'Tenant' means any person who occupies a rental unit for residential purposes with the landlord's consent for an agreed upon consideration.

"(e) 'Security deposit' means a deposit, in any amount, paid by the tenant to the landlord or his agent to be held for the term of the rental agreement, or any part thereof, and includes any required prepayment of rent other than the first full rental period of the lease agreement; any sum required to be paid as rent in any rental period in excess of the average rent for the term; *and any other amount of money or property returnable to the tenant on condition of return of the rental unit by the tenant in condition as required by the rental agreement.* Security deposit does not include an amount paid for an option to purchase, pursuant to a lease with option to purchase, unless it is shown the intent was to evade this act." MCL 554.601; MSA 26.1138(1).[1] (Emphasis added.)

---

[1] 1984 PA 297, MCL 554.601(E)(ii); MSA 26.1138(1)(e)(ii), would effectively resolve this issue in the future by amending the definition of "security deposit" to *exclude:* "An amount paid as a subscription for or purchase of a membership in a cooperative housing association incorporated under the laws of this state. As used in this subparagraph, 'cooperative housing association' means a consumer cooperative that provides dwelling units to its members."

This amendment was approved on December 21, 1984. However, the analysis of HB 5055 which became 1984 PA 297, performed by the

Various decisions have characterized the shareholders-members' status in corporate terms, property terms, or as *sui generis, i.e.,* in a class all its own. See generally, 15A Am Jur 2d, Condominiums and Cooperative Apartments, §§ 59, 60, 78-80, pp 889-891, 908-912; 4B Powell, Real Property, Chapter 54; *Suarez v Rivercross Tenants' Corp,* 107 Misc 2d 135; 438 NYS2d 164, 166 (1981). Moreover, the modern trend from other states has been to recognize the existence of a landlord-tenant relationship in various transactions, generally with respect to the application of summary proceeding statutes. Compare, *Hauptman v 222 East 80th Street Corp,* 100 Misc 2d 153; 418 NYS2d 728, 729 (1979); *Laight Cooperative Corp v Kenny,* 105 Misc 2d 1001; 430 NYS2d 237, 239 (1980); *Sun Terrace Manor v Municipal Court, Los Angeles,* 33 Cal App 3d 739, 742-744; 108 Cal Rptr 307 (1973); *Martin v Villa Roma, Inc,* 131 Cal App 3d 632; 182 Cal Rptr 382 (1982).

Here, plaintiff suggests that, because such a relationship is generally recognized with respect to summary proceedings and, indeed, was specifically recognized in article 13 of the occupancy agreement, in conjunction with the fact that the money paid toward the membership certificate constituted a "security deposit", the act applies under the circumstances presented. We disagree.

Preliminarily, we note that plaintiff places great reliance on article 13, noted above, which states that "there exists * * * a landlord-tenant relationship * * * and * * * there shall be available to the corporation such legal remedy or remedies as are available * * * under the law * * *". In a

Analysis Section of the House of Representatives Consumers Committee sheds no light on the intent of the Legislature at the time the LTRA was enacted. Therefore, in the absence of any clear expression of legislative intent, this Court must attempt to interpret the LTRA as it presently reads.

similar vein, the circuit court noted that the key inquiry is whether a landlord-tenant relationship existed between the parties. But such language in the occupancy agreement does not (and cannot) place the existing relationship within the protection of the LTRA if the act otherwise does not apply.[2] And, as discussed below, we do not believe that the existence of a landlord-tenant relationship is determinative.

Having concluded that a landlord-tenant relationship is present, plaintiff focuses on the definition of "security deposit" under the LTRA as explained in *Stutelberg v Practical Management Co,* 70 Mich App 325, 334; 245 NW2d 737 (1976), *lv den,* 398 Mich 804 (1976), to the effect that such are payments "to afford the tenant protection when he has an expectation of refund of such payment". The circuit court also utilized this approach. The payments involved here may arguably fall within this definition. This, however, would not end our inquiry, even assuming a landlord-tenant relationship. The operative section of the act is § 9, which sets forth the required notice and procedures for raising a claim of damages against the security deposit. Such claims relate to "case[s] of damage to the *rental unit"*. Therefore, in order for the act to apply, irrespective of whether a "security deposit" has been paid in a "landlord-tenant relationship", it must involve a "rental

_____

[2] MCL 554.613(2); MSA 26.1138(13)(2) specifically states that the LTRA does not prejudice remedies available under the summary proceedings act, MCL 600.5701 *et seq.;* MSA 27A.5701 *et seq.,* or other proceedings at law. Thus, other remedies are available in landlord-tenant disputes, so that the recognition that such a relationship exists here does not mean that the LTRA must necessarily apply. It is also not inconsistent to hold that the summary proceedings act is available to a landlord while the LTRA is not available to a tenant, since the former statute deals with possession and the latter only addresses claims against security deposits. Accordingly, the parties' agreement in this regard adds little to analysis.

unit" within the meaning of the act. Neither plaintiff nor the circuit court adequately addresses this issue.

In this connection, § 1(a), reproduced above, states that a rental unit "includes, but without limitation, apartment units, boarding houses, rooming houses, mobile home spaces and single- and 2-family dwellings". While this provision, by its own language, is not exhaustive, we find instructive the conspicuous absence of cooperatives within this enumeration. This is especially so because § 13 of the act makes specific reference to the summary proceedings act, and this latter act *does* enumerate cooperatives as falling within its protection. See MCL 600.5701(b); MSA 27A.5701(b). Moreover, the enumeration contained in the summary proceedings act is also not exhaustive. Accordingly, the Legislature knowing how to expressly include this type of real property transaction or relationship, we find that the absence of cooperatives in the definition of "rental unit" militates against plaintiff's position.

Additionally, the above-cited definitions of "landlord" and "tenant" create confusion as to plaintiff's status. Granting plaintiff's contention that he was a "tenant", it also appears that he would come within the definition of "landlord" inasmuch as a landlord "means an *owner,* lessor or sublessor of the rental unit or the property of which it is a part and, *in addition,* means a person authorized to exercise *any* aspects of the management of the premises * * *". We are aware, as plaintiff points out, that the purchaser of a cooperative membership does not hold legal title to the apartment or have an interest commensurate with legal ownership. Nonetheless, because "landlord" is defined to include owners, lessors, or sublessors, etc., it is clear that the Legislature did not intend that the

"landlord" be legal owner of the property as that term is generally understood with all the attendant rights and obligations. The definition of landlord is not so circumscribed as to depend upon legal concepts of ownership.

A person exercising *any* aspect of management is considered a landlord. Although plaintiff certainly is not vested with all the indicia of ownership, he did exercise certain aspects of management, *i.e.,* plaintiff was on the board of directors directly participating in managing the premises. And, pursuant to article iii of the bylaws, plaintiff had an equitable interest in his membership which, upon sale either by him or defendant, entitled him to certain proceeds. Indeed, the circuit court specifically noted that plaintiff "received an interest in the housing cooperative entitling him to attend meetings, vote and participate *to an extent in the management of the cooperative".* While the parties may in practical effect have stood in the relation of landlord and tenant, their relationship does not fall within that defined by the Legislature in § 1 of the LTRA. We will not rewrite these definitions so as to create a landlord-tenant relationship. The definitions are clear and, since plaintiff exercises *an* aspect of management, we conclude that the LTRA does not apply where plaintiff falls both within the category of tenant and landlord.

Finally, we note that, although not crucial to our disposition of this case in light of the foregoing discussion, we are not convinced that the monies paid here constituted a "security deposit". We agree with the circuit court that the $100 paid for the subscription price is clearly not a security deposit because plaintiff enjoyed rights to the community property through payment of this fee. The remaining portion paid ($627.25), the "value-of-oc-

cupancy agreement", is returnable upon sale of the membership. However, pursuant to article iii, § 8(d)(4) of the bylaws, this amount increases per year depending upon how long the member remains with the corporation. While the increase is not substantial, neither is the price of the occupancy agreement. Accordingly, that the monies held by defendant appreciate in value belies the contention that they constitute a security deposit. Although the fact that it appreciates does not necessarily place this payment outside the definition of security deposit, we find that it further serves to distinguish the instant payment and situation from those contemplated by the LTRA.

Affirmed in part and reversed in part. No costs, a question of public importance being involved.