**STOLTZ MANAGEMENT CO.,**
**Defendant below, Appellant,**

**v.**

**Jill San PHILLIP, Plaintiff**
**below, Appellee.**

Superior Court of Delaware,
New Castle County.

Submitted: Sept. 17, 1990.
Decided: Dec. 12, 1990.

Larry J. Tarabicos, of Morris, James, Hitchens & Williams, Wilmington, for defendant below, appellant.

Richard L. Abbott, Wilmington, for plaintiff below, appellee.

## OPINION

HERLIHY, Judge.

This matter is before the Court on cross motions for summary judgment on an appeal from a decision of the Justice of the Peace Court. Plaintiff below, appellee, Jill San Phillip [Phillip] sued defendant below, appellant, Stoltz Management Co., Inc. [Stoltz] in the Justice of the Peace Court for the return of a "non-refundable redecorating fee", paid as part of an apartment lease. After a trial, the court below awarded judgment in favor of Phillip and against Stoltz. Stoltz timely appealed that judgment.

The issues presented in this case are novel to Delaware. Further, the implications of the decision rendered herein go far beyond this particular case, *infra*, at 585. For the reasons to be stated, the motion of Stoltz for summary judgment is hereby DENIED and the motion of Phillip for summary judgment is hereby GRANTED.

### I

On October 14, 1989[1], Phillip signed a one-year lease with Stoltz for an apartment in Arbor Pointe Apartments with a monthly rental of $550. Stoltz charged Phillip a security deposit of $97.50. The lease provided, among other things, what the security deposit could be used for:

[the] Landlord [Stoltz] may apply ... the whole or any part [thereof] ... for any sum which Landlord may expend or may be required to expend [for] ... any damages....

The security may be used by the Landlord and applied toward payment for damage to the apartment, the furnishings or fixtures supplied by Landlord, appliances or other accouterments without consent of the tenant, provided said damage was not caused by the Landlord or its agents. Without limiting the generality of this clause, it shall be understood that damage to any part of the demised premises or that portion of the building containing the same, the appli-

ances and fixtures and furnishings of the Landlord contained therein and, upon the termination of this lease, the responsibility to leave the premises in a clean and sanitary condition shall be that of the Tenant herein and that said security may be used to defray the expense of cleaning or repair together with Tenant's obligations pursuant to Paragraph (7) herein to the extent such obligations are not fully completed by Tenant, without limiting the liability of Tenant should such be insufficient to pay all such expense.

In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security due hereunder shall be returned within 30 days of delivery of demised premises to Landlord, to Tenant after the date fixed as the end of Lease and after delivery of entire possession of the demised premises to Landlord.

Stoltz also charged Phillip a non-refundable redecorating fee of $175. The lease provision concerning this stated:

In addition to the Rent and the Security Deposit provided to herein, tenant agrees to pay a non-refundable, one-time fee ... as a charge for redecorating the demised premises upon said premises being vacated by Tenant. This fee in no way releases the Tenant from the obligation of leaving the premises in as good condition as when received by Tenant, reasonable use and wear excepted.

Phillip claims she was compelled to make this payment because she had not seen the lease prior to its execution and her furniture was literally on a truck en route to the apartment when presented with the lease.

As part of its motion for summary judgment, Stoltz supplied an affidavit of Ralph Meyers, Executive Vice President with Stoltz. The first issue he makes clear is that the impact of the decision in this case extends beyond the $175 Phillip is suing for. He attached information showing Stoltz collected $46,873 in such fees in 1989 from tenants in three separate apartment

---

1. The lease heading says the date is October 9, 1989. The signature page is witnessed October 14, 1989. The Court finds it unimportant which date is applicable.

complexes, including Arbor Pointe. He cites expenditures for painting, cleaning and repairs much in excess of the redecorating fees collected.

Mr. Meyers' affidavit recites the following additional information about redecorating fees:

1. They are collected at the beginning of the lease.

2. They are used to "defray a portion of the actual costs incurred by Stoltz to repair and correct damages to the apartment units from normal wear and tear, and, if necessary, other damages beyond normal wear and tear."

3. The redecorating fees are deposited into a general account and are comingled with other income received.

It is undisputed that the fee is as advertised. It is not refunded at the end of the lease term. Phillip's payment was not refunded at the termination of her lease and she sued for it.

Stoltz moves for summary judgment on the grounds that (1) the Landlord–Tenant Code, 25 *Del.C.* §§ 5101–6504 [Code] does not prohibit the charging and collecting of non-refundable decorating fees and (2) the fee is not a security deposit under the Code and does not violate the strictures of the law relating to security deposits. 25 *Del.C.* § 5511. Since the facts are not in issue, Stoltz claims it is entitled to judgment in its favor.

Phillip first responds to Stoltz's motion, arguing that (1) she was not advised prelease signing of the fee, (2) she had to sign and pay while her furniture was being moved, (3) the circumstances were unconscionable, and (4) these are factual matters making it impossible to grant Stoltz's motion.

Phillip moves for summary judgment on the grounds that (1) there is no genuine issue of material fact, (2) the security deposit and redecorating fee are used for the same purpose and, thus, the fee is collected in violation of the Code, and (3) since landlords have a duty of maintenance and repair under the Code, 25 *Del.C.* § 5303, this fee contravenes that duty.

Stoltz responds to Phillip's motion contending that (1) the fee is not prohibited by the Code, (2) the fee is not a security deposit and (3) the fee does not violate the duty to repair and maintain.

## II

Where a court is presented with cross motions for summary judgment, neither party's motion will be granted unless no genuine issue of material fact exists and one of the parties is entitled to judgment as a matter of law. *Empire of America v. Commercial Credit*, Del.Supr., 551 A.2d 433 (1988). In connection with Stoltz's motion, Phillip raises the potential factual dispute surrounding the circumstances of the signing of the lease. Thus, Stoltz's motion would have to be denied because of that dispute. *Schagrin v. Wilmington Medical Center*, Del.Super., 304 A.2d 61, 63 (1973).

However, Phillip's summary judgment motion and Stoltz's response thereto do not raise any genuine issue of material fact. Therefore, if Phillip is entitled to a decision in her favor as a matter of law, her motion would be granted. *Wilson v. Joma, Inc.*, Del.Supr., 537 A.2d 187, 188 (1988).

The Court finds it unnecessary to address the existence or nonexistence of a factual issue in connection with Stoltz's motion. The Court finds Phillip is entitled to summary judgment as a matter of law.

## III

The Code was a comprehensive enactment of legal obligations involving landlords and tenants. 58 *Del.Laws*, Ch. 472 § 1; *Hopkins v. Justice of the Peace Court No. 1*, Del.Super., 342 A.2d 243 (1975). It has been part of our law since 1972. The applicability of the Code is as follows:

This code shall regulate and determine all legal rights, remedies, and obligations of the parties and beneficiaries of any rental agreement of a rental unit within this State, wherever executed. Any agreement, whether written or oral, shall be unenforceable insofar as the agree-

ment or any provision thereof conflicts with any provision of this code and is not expressly authorized herein. . . .

25 *Del.C.* § 5103(a).

The Code does not expressly prohibit a nonrefundable redecorating or other such fee. By the same token, it does not expressly authorize the charging of such a fee. Where a lease agreement, written or oral, is not expressly authorized by the Code, the question is whether it conflicts with any provision of the Code. 25 *Del.C.* § 5103(a).

Phillip argues that the redecorating fee conflicts with the landlord's obligation to provide a fit rental unit. 25 *Del.C.* § 5303.[2]

**2.**  (a) The landlord shall at all times during the tendancy:

(1) Comply with all applicable provisions of any state or local statute, code, regulation or ordinance governing the maintenance, construction, use or appearance of the rental unit and the property of which it is a part;

(2) Provide a rental unit which shall not endanger the health, welfare or safety of the tenants or occupants and is fit for the purpose for which it is expressly rented;

(3) Keep in a clean and sanitary condition all areas of his building, grounds, facilities and appurtenances which are maintained by the landlord;

(4) Make all repairs and arrangements necessary to put and keep the rental unit and the appurtenances thereto in as good condition as they were, or ought by law or agreement to have been, at the commencement of tenancy;

(5) Maintain all electrical, plumbing and other facilities supplied by him in good working order;

(6) If the rental agreement so specifies, provide and maintain appropriate receptacles and conveniences for the removal of such waste; and

(7) If the rental agreement so specifies, supply water, hot water and adequate heat as reasonably required by the tenant.

(b) The landlord and tenant may agree by a conspicuous writing independent of the rental agreement that the tenant is to perform specified repairs, maintenance tasks, alterations or remodeling, but only if:

(1) The particular work to be performed by the tenant is for the primary benefit of his rental unit and will be substantially consumed during the remaining tenancy;

(2) The work is not necessary to bring a noncomplying rental unit into compliance with a building or housing code, ordinance or the like; and

Stoltz correctly notes that the Code imposes on the tenant liability for waste and damage. 25 *Del.C.* § 5505.[3]

Therefore, the Court finds that charging the redecorating fee does not conflict with these Code provisions.

Phillip next argues that the fee, not being expressly authorized by the Code, conflicts with the Code provision relating to security deposits. The pertinent statutory provision reads:

(a) If a rental agreement requires the tenant to provide any deposit to the landlord to be held for the term of the rental agreement, or any part thereof, said deposit shall be considered a security deposit. No landlord may require a securi-

(3) Adequate consideration apart from any provision of the rental agreement is exchanged for the tenant's promise. In no event under this subsection may the landlord treat performance of this agreement as a condition to any provision of the rental agreement.

**3.**  (a) If the tenant breaches any rule or covenant which is material to the rental agreement, the landlord shall notify the tenant of his breach, in writing, and must allow at least 7 days after such notice for the remedy or correction of such breach. Such notice shall substantially specify the rule allegedly breached and advise the tenant that if the violation continues after 7 days, the landlord may terminate the rental agreement and bring a proceeding for possession.

(1) If the tenant's failure can be remedied by the landlord, as by cleaning, repairing, replacing a damaged item, or the like, the landlord may so remedy the tenant's failure and bill him for the actual and reasonable cost of such remedy. This bill shall be due and payable immediately upon receipt.

(2) If the tenant's failure constitutes a material breach of an obligation imposed upon tenants by a municipal, county or state code, ordinance, or statute, the landlord may terminate the rental agreement and bring a summary proceeding for possession.

(b) When a failure by a tenant causes or threatens to cause irreparable harm to any person or property, the landlord may, without notice, either remedy the failure and bill the tenant as provided in subsection (a)(1), immediately terminate the rental agreement upon notice to the tenant and bring summary proceedings for possession, or may do both.

(c) The landlord may also bring an action or proceeding for waste or for breach of contract for damage suffered by the tenant's wilful or negligent failure to comply with his responsibilities under the preceding section.

ty deposit in excess of 1 month's rent on contracts for 1 year or more.

\* \* \* \* \* \*

(c) The purpose of the security deposit shall be:

(1) *To reimburse the landlord for actual damages, above normal wear and tear which can be corrected by painting and ordinary cleaning, caused to the premises by the tenant;* and

(2) To pay the landlord for all rental arrearage due under the rental agreement, including rental due for premature termination of the rental agreement by the tenant; and

(3) To reimburse the landlord for all reasonable expenses incurred in renovating and reletting the premises caused by the premature termination of the rental agreement by the tenant, which includes termination pursuant to § 5509(b), provided that reimbursement caused by termination pursuant to § 5509(b) shall not exceed 1 month's rent. [Emphasis added.]

25 *Del.C.* § 5511.

Contrary to Phillip's contention, these provisions do not prohibit a landlord from charging a nonrefundable redecorating fee. In a broad sense, the Code does not require that whatever a landlord wishes to insert in a lease be expressly authorized in the Code. Within the constraints of the Code, a landlord and tenant are free to contract as they wish.

Stoltz's use of the redecorating fee includes defraying the costs incurred to repair and correct damages to apartment units not only from normal wear and tear but from "other damages beyond normal wear and tear".[4] Consequently, by Stoltz's own admission, the non-refundable redecorating fee is used, in part, for the same purpose as the security deposit. The redecorating fee is as advertised, non-refundable. Phillip had to sue in Justice of the Peace Court for its "return". By law, the security deposit is refundable.

There are other key differences between these two charges. A landlord is required

to keep a security deposit in a separate escrow account and cannot use deposits for other operations. 25 *Del.C.* § 5511(b). The redecorating fee here is comingled and used for other operations. A landlord may use the security deposit to defray damage expenses *only* if the tenant is given a list of damages within 15 days of the termination or expiration of the lease. 25 *Del.C.* § 5511(e). Stoltz is not required to supply to Phillip or any tenant any list or accounting of damages in order to use the redecorating fee. Further, while the security deposit has statutorily defined uses, the redecorating fee charged here potentially has no such restrictions.

Failure of the landlord to provide a tenant with a list of damages within the said 15 days means no damages are due and the landlord must remit the security deposit to the tenant. 25 *Del.C.* § 5511(f). If the landlord has not itemized any damages within 15 days and has not refunded the deposit in full within 30 days, the landlord is liable for double the amount of the security deposit. *Id.* Here, Stoltz is not required to itemize any damages or refund the fee under the terms of the redecorating fee.

The redecorating fee charged to Phillip was nearly twice the charge for the security deposit. In using the fee, Stoltz would have to follow none of the carefully set out rules for the handling of security deposits. The provision relating to security deposits was placed into the Code's total scheme because of real or perceived wide-scale abuse in the use and comingling of such deposits by some landlords in the early 70's.

Stoltz's use of the redecorating fee and its handling of the payments of such fees conflicts with the clear, proscribed and prescribed uses and handling of security deposits. Where the fee is not authorized and its use conflicts with the Code, the lease provision under which it was paid is unenforceable.

Stoltz cites four cases in support of its ability to charge and keep the fee. In

---

**4.** Affidavit of Ralph Meyers, Executive Vice President of Stoltz.

*Stutelberg v. Practical Management Co.,* 70 Mich.App. 325, 245 N.W.2d 737 (1976), the court approved various kinds of nonrefundable cleaning fees. Michigan, like Delaware, has a law dealing with security deposits with some similarities to 25 *Del.C.* § 5511. One of the uses permitted by Michigan's law was to reimburse landlords for actual damage to rental units directly resulting from conduct "not reasonably expected in the normal course [of apartment living]". *Stutelberg,* 245 N.W.2d at 741–42. The fees approved by the Michigan court were all for normal carpet, janitorial and other normal cleaning expenses. Unlike this case, the nonrefundable fees sanctioned in Michigan were not used for the same purposes as the separate security deposits. *Stutelberg* is, therefore, inapposite.

In *Schaefer v. Murphey,* 131 Ariz. 295, 640 P.2d 857 (1982), the court approved of a landlord charging a cleaning or redecorating fee. However, unlike Delaware, Arizona's law on security deposits expressly authorizes such a fee in leases, if it is stated in the lease. *Schaefer,* 640 P.2d at 858. *Schaefer* is not applicable here.

Stoltz next cites *Durante v. Gadino,* 157 N.J.Super. 132, 384 A.2d 575 (1978). The security deposit law cited by the New Jersey court does not appear to prescribe uses for such deposits. In any event, the fees approved of in New Jersey were to cover normal wear and tear, cleaning and repair. There is no indication the use of the fees in New Jersey coincided with uses allowed under that state's law on security deposits. While the fee charged here covered normal wear and tear usage, it overlapped the use of security deposits. *Durante* is also inapplicable.

Finally, Stoltz cites *Holmes v. Canlen Management Corp.,* Tex.Ct.Civ.App., 542 S.W.2d 199 (1976). The court approved of a "nonrefundable painting fee". Apparently, Texas has some type of law on security

deposits. However, it is impossible to tell its reach from the Texas court's opinion. There was no security deposit charged to the Texas tenant. The narrow issue in *Holmes* was whether the fee was a disguised security deposit. The court found it was not. The implication is that the court did not find the use of the fee to be inconsistent with the use of a security deposit. In contrast, this Court has found Stoltz's fee to be inconsistent based on Stoltz's use of the fee and Delaware's specific law on security deposits. Therefore, *Holmes* is inapposite.

Delaware's security deposit law is not the same as any in the four states cited in the foregoing opinions. No landlord in those cases used the fees for the same purposes as allowed in their statutes relating to security deposits. That is not the case with Stoltz.

To be clear, this Court has found that Stoltz's nonrefundable redecorating fee, being not expressly authorized by the Code, is also in conflict with it. This results in the fee being unenforceable. 25 *Del.C.* § 5103. The Court finds that Stoltz's redecorating fee is not a security deposit in the sense that by failing to provide Phillip with a list of damages and refund it within the requisite number of days, Stoltz has become liable for double damages. Compare 25 *Del.C.* § 5511(f). Therefore, Phillip is entitled to a judgment for $175 plus costs.[5]

For the reasons stated herein Stoltz's motion for summary judgment is DENIED and Phillip's motion for summary judgment is GRANTED as aforesaid.

---

5. As Stoltz pointed out, the Court notes the $46,873 Stoltz collected in 1989 as non-refundable redecorating fees. This case is not a class action and this Court has no rule providing for a class action. However, the validity of those fees is impacted by this decision.