640 P.2d 857
**Michael SCHAEFER, Appellant,**

v.

**Janis F. MURPHEY, Appellee.**

No. 15333.

Supreme Court of Arizona,
In Division.

Jan. 15, 1982.

Rehearing Denied Feb. 23, 1982.

Michael Schaefer, in pro. per.

Solomon, Relihan & Blake by Ralph J. Blake, III, Phoenix, for appellee.

HAYS, Justice.

On July 21, 1977 the plaintiff-appellant, Michael Schaefer (hereinafter "Landlord") filed a civil complaint in Justice Court seeking judgment against the defendant-appellee, Janis F. Murphey (hereinafter "Tenant"). Landlord alleged Tenant was indebted to him for apartment rent for the months of June and July 1977 in the amount of $624 plus $100 for a pet deposit. In order not to exceed the jurisdictional limits of the Justice Court, Landlord waived any amount above $499.

Tenant counterclaimed alleging violations of certain provisions of the Arizona Residential Landlord Tenant Act (hereinafter "Act")[1] and requested judgment for the sum of $3,000, costs and attorney fees. Because the amount of Tenant's counterclaim exceeded the $500 jurisdictional limit of the Justice Court, the cause was transferred to Superior Court.

Following a bench trial in Superior Court, the following judgment was entered:

1. Against Tenant for $531 representing rent from June 10 to July 31, 1977;

2. Against Landlord for a total sum of $956.40 which included:

a. $200 for failure of Landlord to return security deposit in violation of A.R.S. §§ 33–1321 and 33–1367;

b. $132.40 representing expenses incurred due to Landlord's failure to provide habitable premises;

c. $624 for unlawful ouster in violation of A.R.S. § 33–1367.

Landlord filed a notice of appeal from the portion of the judgment in favor of Tenant.

We take jurisdiction pursuant to 17A A.R.S. Civil Appellate Procedure Rules, Rule 19(e).

Landlord raises three issues on appeal:

1. Does the evidence support an award of $200 for failure to return a security deposit in violation of A.R.S. §§ 33–1321 and 33–1367?

2. Does the evidence support an award of $132.40 for expenses incurred because the premises were not habitable on the date Tenant was to move in?

3. Does the evidence support an award of $624 for unlawful ouster under A.R.S. § 33–1367?

SECURITY DEPOSIT

A.R.S. § 33–1310(13) defines "security" as "money or property given to assure payment or performance under a rental agreement. 'Security' does not include a reasonable charge for redecorating or cleaning." The Landlord's obligations with respect to security deposits are set forth in A.R.S. § 33–1321.

"A. A landlord shall not demand or receive security, however denominated, including, but not limited to, prepaid rent in an amount or value in excess of one and one-half month's rent.

"B. Cleaning and redecorating deposits, if nonrefundable, must be so stated in writing by the landlord.

"C. Upon termination of the tenancy, property or money held by the landlord as prepaid rent and security may be applied to the payment of accrued rent and the amount of damages which the landlord has suffered by reason of the tenant's noncompliance with § 33–1341 all as itemized by the landlord in a written notice delivered to the tenant together with the amount due within fourteen days after termination of the tenancy and delivery of possession and demand by the tenant.

1. A.R.S. §§ 33–1315(A), 33–1323, 33–1324, 33– 1361(A).

"D. If the landlord fails to comply with subsections B and C of this section the tenant may recover the property and money due him together with damages in an amount equal to twice the amount wrongfully withheld.

. . . ."

▪ Provision 5 of the Rental Agreement in the instant case deals with security deposits and provides:

"SECURITY DEPOSIT. Following the expiration of this Agreement, vacation of the premises, return of the keys and compliance with all of the terms of this Agreement, the security deposit shall be refunded as hereafter provided after deducting therefrom the cost of cleaning the carpets and drapes in the Stipulated sum of Forty and No/100 dollars ($40.00), and the cost of restoring the premises to a clean and rentable condition and repairing any damage not listed on the back of this Agreement."

Although cleaning and redecorating deposits are *not* considered part of a security deposit under § 33–1310(13), the term "Security Deposit" *as employed in the instant rental agreement* included a $40 deposit for cleaning carpets and drapes. According to the written terms of the rental agreement, this $40 was clearly nonrefundable even though Landlord did not use the term "nonrefundable." Thus, compliance with the statutory definition of security deposit necessitates setting the amount of security at $60.

At the time Tenant vacated the apartment, her rent payments were in arrears. The trial judge found the amount of rent due from Tenant was $531, and she does not dispute this sum.

▪ Subsection (C) of § 33–1321 permits a landlord to apply the security deposit as prepaid rent to any rental payments accrued by the tenant. To take advantage of this section, the landlord must deliver written notice to the tenant itemizing the amounts due within 14 days after termination of the tenancy. Landlord did not do this. However, Landlord maintains that "the filing of a civil action for money damages for unpaid rent is a written communication" fulfilling the requirements of the statute. We do not agree since such an interpretation would permit landlords to escape the strictures of the Arizona Landlord-Tenant Act simply by bringing civil suits for unpaid rent. We hold that Landlord failed to comply with § 33–1321(C). Tenant is entitled to recover the security deposit plus damages equal to twice the amount of the security deposit under § 33–1321(D). However, Tenant is not entitled to damages under § 33–1367 for the reasons set forth in the portion of this opinion dealing with unlawful ouster.

## HABITABLE PREMISES

▪ Tenant's mother, acting as an agent for Tenant, signed the rental agreement on April 5, 1977. The commencement date of the lease was April 9, although Tenant was not to arrive from out-of-state until approximately June 1. During the interim, Landlord was to clean, repair, paint, and recarpet (the extent of recarpeting is disputed) the apartment, and Tenant was to use the apartment for storage. When Tenant finally arrived, one toilet was inoperable, the kitchen and linen closet had not been painted, floor tile was missing in the bathroom, the promised draperies had not been hung, and several interior doors were not in place. The trial court found the premises were not habitable on the day the lease was to begin in violation of A.R.S. §§ 33–1361(B) and 33–1324.

A.R.S. § 33–1324 defines the duty of the landlord to maintain fit premises:

"A. The landlord shall:

. . . .

2. Make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition.

. . . .

4. Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, air-conditioning and other facilities and appliances, including elevators, supplied or required to be supplied by him."

Although several jurisdictions have defined "habitable," [2] this court has not considered the issue. However, an interpretation of the term "habitable" is not required for the purpose of this case because the Act sufficiently defines "fit and habitable" to include maintenance of plumbing facilities in good and safe working order.

Despite numerous complaints from Tenant, Landlord made no genuine effort to repair the toilet. At trial Landlord explained his inaction: "There was [sic] two bathrooms, and one of the bathrooms wasn't working right. We felt with two bathrooms it wasn't that urgent a thing." Landlord's failure to repair an inoperable toilet involved noncompliance with § 33–1324(A)(4).

A.R.S. § 33–1361(A) provides:

"[I]f there is a noncompliance by the landlord with § 33–1324 materially affecting health and safety, the tenant *may* deliver a written notice to the landlord specifying the acts and omissions constituting the breach and that the rental agreement will terminate upon a date not less than twenty days after receipt of the notice if the breach is not remedied in ten days . . . (emphasis supplied)."

We find that an inoperative toilet is a condition materially affecting health and safety. Thus, although Tenant could have availed herself of the remedy set forth in subsection (A), but did not do so, she was not precluded from seeking damages under subsection (B).

"B.   Except as provided in this chapter, the tenant may recover damages and obtain injunctive relief for any noncompliance by the landlord with the rental agreement or § 33–1324.

"C.   The remedy provided in subsection B of this section is in addition to any right of the tenant arising under subsection A of this section."

The trial judge awarded damages of $132.40. This amount represents Tenant's telephone bill for long distance calls to Phoenix during April and May 1977 regarding problems with the apartment. In light of the evidence in this case, $132.40 is not an excessive award since the premises were in violation of § 33–1324 from April 7 until the date Tenant moved out of the apartment.

UNLAWFUL OUSTER

■   A.R.S. § 33–1367 delineates a tenant's remedies for a landlord's unlawful ouster, exclusion or diminution of services.

"If the landlord unlawfully removes or excludes the tenant from the premises or willfully diminishes services to the tenant by interrupting or causing the interruption of electric, gas, water or other essential service to the tenant, the tenant may recover possession or terminate the rental agreement and, in either case, recover an amount not more than two months' periodic rent or twice the actual damages sustained by him, whichever is greater. If the rental agreement is terminated the landlord shall return all security recoverable under § 33–1321."

Unlawful ouster, as defined by statute, occurs in two situations: 1) the landlord removes or excludes the tenant from the premises unlawfully, or 2) the landlord interrupts, or causes the interruption of, essential services. Either of these circumstances will preclude a tenant from occupying the rental premises. Thus, the evident intent of § 33–1367 is to deal with the wrongful dispossession situation occasioned by the *actual* removal or exclusion of the tenant or by the *willful* diminution of services. Neither of these situations applies to the instant case.

Nevertheless, Tenant maintains she was unlawfully ousted because Landlord en-

2.   Cases addressing an implied warranty of habitability include: *Concord Village Management Co. v. Rubin*, 101 Misc.2d 265, 421 N.Y.S.2d 811 (1979); *Kamarath v. Bennett*, 568 S.W.2d 658 (Tex.1978); *Green v. Superior Court*, 10 Cal.3d 616, 111 Cal.Rptr. 704, 517 P.2d 1168 (1974); *Foisy v. Wyman*, 83 Wash.2d 22, 515 P.2d 160 (1973); *Kline v. Burns*, 111 N.H. 87, 276 A.2d 248 (1971); *Javins v. First National Realty Corp.*, 428 F.2d 1071, *cert. denied*, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970); *Lemle v. Breeden*, 51 Haw. 426, 462 P.2d 470 (1969).

gaged in "retaliatory conduct" as defined in § 33–1381.

"A. Except as provided in this section, a landlord may not retaliate by increasing rent or decreasing services or *by bringing or threatening to bring an action for possession* after any of the following:

. . . .

"2. The tenant has complained to the landlord of a violation under § 33–1324.

"B. If the landlord acts in violation of subsection A of this section, the tenant is entitled to the remedies provided in § 33–1367 . . ." (Emphasis supplied).

Because subsection (B) entitles a tenant to the remedies available under the unlawful ouster statute, Tenant implies that "retaliatory conduct" is synonymous with "unlawful ouster" and, therefore, the evidence supports the trial court's finding. We do not agree. Despite the availability of corresponding remedies under the unlawful ouster and retaliatory conduct statutes, they are not equivalent since both provisions proscribe different conduct.

Even were we to accept Tenant's argument, the evidence presented to the trial court fails to support a finding of retaliation. The prohibitions of § 33–1381 apply to the following conduct: 1) increasing rent, 2) decreasing services, 3) bringing an action for possession, and 4) threatening to bring an action for possession. No testimony regarding any of the four categories of proscribed conduct was adduced at trial. In her brief on appeal, Tenant refers to a forcible detainer action by Landlord that might be considered retaliatory under the statute. However, no reference to this prior action was made at trial. As an appellate court, we are confined to reviewing only those matters contained in the record. *Southern Pacific Transportation Co. v. Lueck,* 111 Ariz. 560, 535 P.2d 599, 112 Ariz. 277, 540 P.2d 1258 (1975), *cert. denied,* 425 U.S. 913, 96 S.Ct. 1510, 47 L.Ed.2d 763 (1976); *West v. Baker,* 109 Ariz. 415, 510 P.2d 731 (1973); *Gold v. Killeen,* 50 Ariz. 126, 69 P.2d 800 (1937). Tenant may well have certain actions and remedies available to her under other sections of the Act;

however, the evidence simply does not support the trial court's finding of unlawful ouster.

## ATTORNEY'S FEES

Tenant has requested attorney's fees pursuant to A.R.S. § 12–341.01. In *Wenk et ux. v. Horizon Moving & Storage Co.,* 639 P.2d 321 (1982), we held that this statute which permits the court to "award the successful party reasonable attorney's fees" applies to appeals as well as trials. If Tenant anticipates that she is a successful party entitled to an award of attorney's fees under A.R.S. § 12–341.01, she should proceed in accordance with Rule 21, Arizona Rules of Civil Appellate Procedure.

That portion of the trial court's judgment regarding the security deposit is reversed and remanded for proceedings consistent with this opinion. The trial court's award of damages to Tenant for Landlord's failure to provide habitable premises is affirmed, and the finding of unlawful ouster is reversed due to insufficiency of the evidence.

STRUCKMEYER and CAMERON, JJ., concur.