835 A.2d 1185

**Ho PAK and Lisa Leone Pak,**

**v.**

**Minh–Vu HOANG.**

**No. 14, Sept. Term, 2003.**

Court of Appeals of Maryland.

Nov. 18, 2003.

Carlos M. Recio (Davis & Campbell, L.L.C., on brief), of Washington, D.C., for petitioners.

Fredric J. Einhorn of Rockville, for respondents.

Argued before BELL, C.J., ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, Judge.

This case arises out of a landlord and tenant dispute. In December of 1999, Minh–Vu Hoang, respondent, filed a complaint in the District Court of Maryland sitting in Montgomery County, against Ho and Lisa Pak, petitioners, seeking $25,000.00 in damages for a breach of lease. Petitioners were tenants in a townhouse owned by respondent.[1]

Petitioners prayed a jury trial and the case was transferred to the Circuit Court for Montgomery County. Petitioners then filed counterclaims alleging that respondent had breached the lease and had not returned their security deposit in violation of the Maryland Security Deposit Act, Md.Code (1974, 2003 Repl.Vol.), § 8–203 of the Real Property Article.[2] In July of 2000, the Circuit Court granted petitioners' Motion for Summary Judgment, dismissed with prejudice respondent's claim and entered judgment against respondent as to petitioners' counterclaims. On October 31, 2000, after a dam-

---

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. The townhouse was also owned by Mr. Thanh Hoang, respondent's husband, but Mr. Hoang was not named as a party to this litigation.

2. Hereinafter, unless noted otherwise, all statutory references will be to this section of the Maryland Code. Section 8–203(e)(4) states:

" § 8–203. Security deposits.

. . .

(4) If the landlord, without a reasonable basis, fails to return any part of the security deposit, plus accrued interest, within 45 days after the termination of the tenancy, the tenant has an action of up to threefold of the withheld amount, plus reasonable attorney's fees.

ages hearing, the Circuit Court entered a judgment of $7,378.91 in favor of petitioners. This sum included petitioners' attorney's fees up to that point.

Petitioners then filed post-judgment discovery motions in an effort to aid in their recovery of the judgment against respondent, to which there was no response. Petitioners then filed a Motion to Compel Answers to Interrogatories and Request for Production of Documents in Aid of Execution. In an order dated May 23, 2001, the Circuit Court granted the motion. Petitioners thereafter filed a Petition for Civil Contempt and for the Entry of Appropriate Relief on July 23, 2001, in response to respondent's failure to comply with the Circuit Court's May 23rd order. Following a September 20, 2001 hearing, the Circuit Court entered another order directing respondent to fully and completely respond to the interrogatories and request for documents. A compliance review hearing was set for October 29, 2001. After respondent failed to appear at the October 29th hearing, the Circuit Court issued a writ of body attachment for respondent's arrest. Respondent was arrested and released on her own recognizance.

On December 6, 2001, there was a hearing in the Circuit Court on petitioners' Petition for Civil Contempt. The court found respondent in civil contempt and sanctioned respondent with 30 days of incarceration subject to a purge provision, *i.e.*, respondent could purge the contempt with her complete compliance with the court's order regarding petitioners' Motion to Compel Answers to Interrogatories and Request for Production of Documents in Aid of Execution. The Court set a compliance hearing for January 14, 2002. On December 6, 2001, petitioners filed a Motion for Supplemental Award of Attorney's Fees from respondent.

Respondent paid the original judgment and all interest then due on January 11, 2002, one business day before the compliance hearing was to take place, by delivering a check to petitioners' counsel. At the January 14th hearing, the court noted that the supplemental attorney's fees motion was outstanding and set a final hearing on that motion for February

15, 2002. The Circuit Court denied petitioners' Motion for a Supplemental Award of Attorney's Fees and a final order was issued on August 23, 2002.

Petitioners appealed that decision to the Court of Special Appeals. The Court of Special Appeals, in an unreported opinion issued on January 21, 2003, affirmed the decision of the Circuit Court.

Petitioners then filed a Petition for Writ of Certiorari with this Court, and, on May 7, 2003, we granted the petition. *Pak v. Hoang*, 374 Md. 358, 822 A.2d 1224 (2003). Petitioners present four questions for our review:

"I.

Whether the Circuit Court has the authority to award supplemental attorney's fees pursuant to the Maryland Rules where a judgment debtor has willfully violated court orders and has been found in contempt.

II.

Whether the Circuit Court has the power to award supplemental attorney's fees pursuant to a court's inherent powers as recognized in *Klupt v. Krongard*, 126 Md.App. 179, 728 A.2d 727 (1999).

III.

Whether the Circuit Court has the authority to award supplemental attorney's fees incident to its contempt powers.

IV.

Whether the Circuit Court has the authority to award supplemental attorney's fees pursuant to the Maryland Security Deposit Act, Maryland Code Real Estate, § 8–203, and to enforce a judgment entered pursuant to that Act." [3]

---

**3.** While the questions presented to this Court within petitioners' Petition for Writ of Certiorari differ in form from these questions, they are substantively the same.

We answer petitioners' fourth question in the affirmative and hold that pursuant to the Maryland Security Deposit Act the Circuit Court has the authority to award attorney's fees earned in enforcing a judgment rendered under that statute and has the authority to award attorney's fees in respect to appeals defending any such judgment. Attorney's fees earned in the filing of post-judgment motions and appeals fit within § 8–203(e)(4)'s phrase "reasonable attorney's fees" of the remedial Maryland Security Deposit Act. The trial courts have discretion to award such fees. As we reverse on petitioners' fourth question, we need not address the remaining questions. Accordingly, we reverse the judgment of the Court of Special Appeals.

## I. The Trial Court's Decision

On February 15, 2002, at the hearing on petitioners' Motion for Supplemental Award of Attorney's Fees, the trial court stated:

"I think that [respondent's] conduct is reprehensible. I think that she really has done whatever she could to throw roadblocks in the way of the other side. I think that she has defied the orders of this court. She has done a lot of things that I take a very dim view of, and I think that she ought not get away with those things.

"My problem, however, is that this was a judgment which was entered against her. She did everything she could to avoid complying with the discovery to aid in the enforcement of that judgment, but ultimately she did pay the amount of that judgment.

"The contempt finding ... was a contempt finding with regard to the discovery that was intended to help enforce the judgment.

"It seems to me that once the amount of that judgment is paid, that the thrust of that—the contempt finding disappears.

. . .

"So, as much as, in fairness, I would like to go ahead and impose a sanction for that contempt ... I don't think it would be enforceable.

"... I wish there were a greater sanction than that that could be imposed on her. I don't feel that I can.

"There is also a request that has been made for supplemental attorney's fees under the security deposit statute, and my reading of that statute is that the attorney's fees that were awarded at the time are really the only attorney's fees you can get.

"... I don't read the statute to say that you can go back and award supplemental attorney's fees later when you have difficulty enforcing the judgment that was entered the first time.

"So, I'm not going to award supplemental attorney's fees, and I am not going to impose any part of the 30 days [jail sentence] which I believe Judge Rupp had imposed.

"I regret that I am not going to do either one of those things, because I think in fairness [respondent] probably deserves them, but I work within the statutes and the rules I have to work with and that is where I come out." [Alterations added.]

## II.  Discussion

The determinative issue on review in this case is whether courts have the authority to award attorney's fees pursuant to the Maryland Security Deposit Act (the Act), specifically under § 8–203(e)(4), which are earned after a judgment has been rendered in the trial court and in pursuit of collection of that judgment. We hold that the remedial nature of the Maryland Security Deposit Act permits a trial court to award post-judgment attorney's fees under the Act in order to ensure full vindication of tenants' rights to recover security deposits owed to them as contemplated by the statute.

## A. Standard of Review

When we interpret statutes, this Court has annunciated that the " 'paramount goal . . . is to identify and effectuate the legislative intent underlying the statute at issue.' " *Moore v. Miley,* 372 Md. 663, 677, 814 A.2d 557, 566 (2003)(quoting *Derry v. State,* 358 Md. 325, 335, 748 A.2d 478, 483 (2000)). We may ascertain the legislative intent of a statute by analyzing its plain language and by considering its context within the statutory scheme as a whole. *Moore,* 372 Md. at 677, 814 A.2d at 566; *see also In re Mark M.,* 365 Md. 687, 711, 782 A.2d 332, 346 (2001). Where " 'the words of a statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning,' we 'will give effect to the statute as it is written.' " *Moore,* 372 Md. at 677, 814 A.2d at 566 (quoting *Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204, 1206–07 (1994)). In discerning the legislative intent where the statutory language is ambiguous, however, we look beyond the statute's plain language. *Moore,* 372 Md. at 677, 814 A.2d at 566; *see also In re Mark M.,* 365 Md. at 711, 782 A.2d at 346. If a statute's language is found to be ambiguous, then it is appropriate to analyze the legislative history and other relevant factors, such as "a bill's title and function paragraphs, amendments . . . and other material that fairly bears on the fundamental issue of legislative purpose or goal," which may reveal the intent or general purpose of the statute. *Moore,* 372 Md. at 677, 814 A.2d at 566 (quoting *In re Anthony R.,* 362 Md. 51, 58, 763 A.2d 136, 140 (2000)(internal citation omitted)). The Court must be careful, however, to avoid a "[c]onstruction of a statute which is unreasonable, illogical, unjust, or inconsistent with common sense." *Degren v. State,* 352 Md. 400, 417, 722 A.2d 887, 895 (1999) (alteration added) (quoting *Tracey v. Tracey,* 328 Md. 380, 387, 614 A.2d 590, 594 (1992)); *see also Moore,* 372 Md. at 677–78, 814 A.2d at 566.

## B. Section 8–203(e)(4)

The specific statutory provision at issue in the case *sub judice* is Md.Code (1974, 2003 Repl.Vol.), § 8–203(e)(4) of the Real Property Article, which states:

"(e) *Return of deposit to tenant; interest.* ...

...

(4) If the landlord, without a reasonable basis, fails to return any part of the security deposit, plus accrued interest, within 45 days after the termination of the tenancy, the tenant has an action of up to threefold of the withheld amount, plus reasonable attorney's fees."

The parties do not dispute that trial courts may require a landlord to pay the tenant's attorney's fees incurred prior to and at trial; they agree that the statute is clear and unambiguous as to that point. The plain language of § 8–203(e)(4), however, is silent, and thus, it is asserted, ambiguous, as to whether post-judgment attorney's fees, *i.e.*, fees for post-judgment discovery motions and appeals, come within the provision permitting the awarding of "reasonable attorney's fees." Petitioners urge this Court to broadly construe the phrase "the tenant has an action of up to threefold of the withheld amount, plus *reasonable attorney's fees* " to include attorney's fees occurring after judgment has been rendered, *i.e.*, post-judgment motions and appeals. Petitioners argue that such an interpretation serves the remedial purpose of the statute, while a contrary interpretation would frustrate that same purpose.

While this Court has never addressed the alleged remedial nature of § 8–203(e)(4), we have defined what is meant by remedial in construing other statutes and rules. In *Langston v. Riffe,* 359 Md. 396, 408–09, 754 A.2d 389, 395–96 (2000), this Court stated the following, *inter alia,* in determining a statute to be remedial:

" 'Generally, remedial statutes are those which provide a remedy, or improve or facilitate remedies already existing for the enforcement of rights and the redress of injuries. They also include statutes intended for the correction of defects, mistakes and omissions in the civil institutions and the administration of the state. The definition of a remedial statute has also been stated as a statute that relates to

practice, procedure, or remedies and does not affect substantive or vested rights.

" 'Every statute that makes any change in the existing body of law, excluding only those enactments which merely restate or codify prior law, can be said to "remedy" some flaw in the prior law or some social evil.' [Footnotes omitted.]

3   Norman J. Singer, *Sutherland's Statutory Construction,* *supra,* § 60.02, at 152; *see also* 2 *id.* § 41.09, at 399 ('The statutes which fall into this category [of remedial statutes] are ones that describe methods for enforcing, processing, administering, or determining rights, liabilities or status.').

"The appellate courts of this state have also defined remedial legislation.   For instance, in [*State of Maryland Comm'n on Human Relations v. Amecom Div. of Litton Sys., Inc.,* 278 Md. 120, 125, 360 A.2d 1, 5 (1976) ], we said that '[a]n act is remedial in nature when it provides only for a new method of enforcement of a preexisting right.' (Citing [*Kelch v. Keehn,* 183 Md. 140, 145, 36 A.2d 544, 545 (1944) ]; *Ireland v. Shipley,* 165 Md. 90, 98, 166 A. 593 (1933)).  'Under Maryland law, statutes are remedial in nature if they are designed to correct existing law, to redress existing grievances and to introduce regulations conducive to the public good.' *Weathersby v. Kentucky Fried Chicken Nat'l Management Co.,* 86 Md.App. 533, 550, 587 A.2d 569, 577 (1991) (citing *State v. Barnes,* 273 Md. 195, 208, 328 A.2d 737, 745 (1974)), *rev'd on other grounds,* 326 Md. 663, 607 A.2d 8 (1992)."   [Alterations added.]

*See also Rawlings v. Rawlings,* 362 Md. 535, 556–57, 766 A.2d 98, 110 (2001)(determining the retroactivity of the remedial rule, Maryland Rule 15–207(e) and quoting to *Langston* ).   We recognized the remedial nature of another section of the Residential Lease Subtitle of the Real Property Article in *Neal v. Fisher,* 312 Md. 685, 541 A.2d 1314 (1988), where we interpreted § 8–211 of the Real Property Article, entitled, "Repair of dangerous defects; rent escrow."   We specifically recognized the remedial nature of § 8–211(n) due in part to

the fact that the Act provided "remedies not available at common law." We stated:

"In short, we have before us remedial legislation. When the legislature enacts a statute designed, as the Act is, to provide remedies not available at common law, it is not desirable that construction should be mindlessly guided by a slogan, such as 'statutes in derogation of the common law must be narrowly construed.' Statutes of this nature 'are remedial and designed to close a gap in the preexisting law....' A court should not permit 'a narrow or grudging process of construction to exemplify and perpetuate the very evils to be remedied....'"

*Neal,* 312 Md. at 693–94, 541 A.2d at 1318 (citations omitted). Section 8–203 serves a similar, remedial purpose—to provide tenants with a remedy not provided for under common law.

We also have discussed the remedial nature of several other Maryland statutes. *See, inter alia, Livering v. Richardson's Restaurant,* 374 Md. 566, 574, 823 A.2d 687, 691 (2003)(Maryland Workers' Compensation Act); *Friolo v. Frankel,* 373 Md. 501, 517–18, 819 A.2d 354, 364 (2003)(Wage and Hour Law); *Caffrey v. Dep't of Liquor Control for Montgomery County,* 370 Md. 272, 306, 805 A.2d 268, 288 (2002)(Maryland Public Information Act); *Smith v. Borello,* 370 Md. 227, 235, 804 A.2d 1151, 1155 (2002)(survival and wrongful death statutes); *Katsenelenbogen v. Katsenelenbogen,* 365 Md. 122, 134, 775 A.2d 1249, 1256 (2001)(domestic abuse statute); *Coburn v. Coburn,* 342 Md. 244, 252, 674 A.2d 951, 955 (1996)(domestic abuse statute). We have said that once we have determined that a statute is remedial in nature that it "'must be liberally construed ... in order to effectuate the [statute's] broad remedial purpose.'" *Caffrey,* 370 Md. at 306, 805 A.2d at 288 (quoting *A.S. Abell Publg. Co. v. Mezzanote,* 297 Md. 26, 32, 464 A.2d 1068, 1071 (1983))(alteration added).

The right of a tenant to sue a landlord for the return of a security deposit first appeared in its current form in Md.Code (1957, 1973 Repl.Vol.) Art. 21 § 8–213, *see* 1973 Md. Laws, Chap. 2, and was recodified into the Real Property Article of the Maryland Code in 1974, *see* 1974 Md. Laws, Chap. 12.

The statute itself, and the title clauses to the predecessor and current chapter laws, do not directly speak to the remedial nature of the provisions related to landlord-tenant security deposits. We therefore look to whether § 8–203(e)(4) " 'provide[s] a remedy, or improve[s] or facilitate[s] remedies already existing for the enforcement of rights and the redress of injuries.' " *Langston,* 359 Md. at 408, 754 A.2d at 395 (alterations added)(internal citation omitted). Furthermore, we look to whether § 8–203(e)(4) provides for " 'the correction of defects, mistakes and omissions in the civil institutions and the administration of the state' " and whether § 8–203(e)(4) is " 'a statute that relates to practice, procedure, or remedies and does not affect substantive or vested rights.' " *Id.* at 408–09, 754 A.2d at 395 (internal citations omitted).

Section 8–203(e)(4) provides a remedy to tenants who believe that their landlord has improperly failed to return to them their security deposits.[4] The statute sets out a clear procedure and time line for the return of security deposits; the landlord must return the deposit with interest within 45 days after the termination of the lease. In addition to compensating the tenants' direct injury, § 8–203(e)(4) provides for treble damages "of up to threefold of the withheld amount." This punitive measure, although capped at three times the withheld amount, illustrates the Legislature's concern regarding the protection of tenants' rights and remedies against improper landlord actions.

This inclusion of a treble damage clause recognizes the difficulties often encountered by tenants seeking the return of security deposits from landlords. Litigation arising under § 8–203(e)(4) applies only to residential leases. It generally

---

4. In addition to § 8–203(e)(4), *see also* Md.Code (1974, 2003 Repl.Vol.), § 8–203.1(a)(7) of the Real Property Article (stating "that failure of the landlord to comply with the security deposit law may result in the landlord being liable to the tenant for a penalty of up to 3 times the security deposit withheld, plus reasonable attorney's fees"); 62 Op. Att'y Gen. 523 (Md.1977)(stating, in reference to another section of the Residential Lease Subtitle, § 8–211, that "[t]he thrust of the State's rent escrow statute is to provide tenants with additional judicial remedies in support of a limited, implied warrant of habitability")(alteration added).

involves only relatively small sums of money in the context of other civil litigation.[5] Section 8–203(b)(1) sets the maximum amount of a security deposit a landlord may charge as no more than "the equivalent of two months' rent per dwelling unit, regardless of the number of tenants." A landlord not returning a security deposit, when she is required to do so, forces the tenant to bring suit. The Legislature recognized that the results of tenants' cost-benefit analyses in respect to balancing the costs of litigation against the amount of recovery, might be an impediment to the rights of tenants to seek the return of their security deposits and could result in tenants not recovering monies rightfully owed to them. The statute's imposition of attorney's fees recognizes the problem and addresses it by allowing for an additional remedy for tenants. The remedy provided for by § 8–203(e)(4) creates a procedure by which tenants can recover monies that are rightfully theirs; it is remedial in nature.

█ As we hold that § 8–203(e)(4) is a remedial statute, we look to whether the liberal construction given to remedial statutes allows for the inclusion of post-judgment attorney's fees within the phrase "reasonable attorney's fees," as stated in § 8–203(e)(4). We hold that § 8–203(e)(4)'s "reasonable

---

5. Petitioners state in their brief that the $2,500 security deposit for respondent's "upscale townhouse in Bethesda, Maryland" was "likely in the upper range of security deposits handled by Maryland's District Courts." The Department of Housing and Urban Development's (HUD) report on fair market rents for the fiscal year 2003 supports this contention. *See* 67 Fed.Reg. 61405 (September 30, 2002). Pursuant to that report, for a two-bedroom rental in the greater Baltimore area (including Anne Arundel, Baltimore, Carroll, Harford, Howard, Queen Anne's Counties and Baltimore City) the average rent is $844 per month. *Id.* The average for Columbia is $952 per month. *Id.* For the greater Washington, DC area (including Calvert, Charles, Frederick, Montgomery and Prince George's Counties) the average is $1154 per month. *Id.* The average for Cumberland (Allegany County) is $535 per month. *Id.* And for Cecil County, the average is $752 per month (including the greater Wilmington Newark area). *Id.* Doubling the highest of those averages for metropolitan areas of Maryland, $1154 for the greater Washington, DC area, still does not equal the security deposit imposed in this case, and thus illustrates that this case represents the higher range of security deposits in Maryland.

attorney's fees" provision includes fees for post-judgment motions necessitated by the landlord's refusal to satisfy the judgment. First, logic supports such a result. Section 8–203(e)(4) eliminates some of the potential disparity between certain tenants and landlords in disputes regarding security deposits. An interpretation excluding post-judgment attorney's fees from § 8–203(e)(4) during a tenant's direct attempt to enforce collection of a judgment against such a landlord or a tenant's defense of a judgment during the appellate process, might effectively defeat the tenant's right to fully recover from the landlord. As occurred in this case, and potentially in many cases, especially those where the security deposit is a relatively small amount, a landlord could delay, impede and actively thwart the collection of the judgment until it is no longer cost effective for the tenant to pursue collection of a judgment.[6] The statute allows for "reasonable attorney's fees" incurred in an action for a return, *i.e.*, actual collection, of security deposits. Until a security deposit, including attorney's fees, is actually returned it is still in the process of being collected. The statute encompasses attorney's fees associated with "collection." Considering the costs of the appellate process, precluding, categorically, the recovery of appellate attorney's fees might effectively render meaningless the remedy created by the Legislature.

---

**6.** Even if a landlord's appeal was made in a good faith belief that it was warranted, the added cost in post-judgment or appellate attorney's fees alone could create an unreasonable disparity for a successful tenant. For example, if an apartment rents for $500 per month, the maximum amount that a landlord could hold as a security deposit is two times that amount, or $1000. The trial judge may award the tenant up to three times that amount plus interest. If, as in the case *sub judice*, the case is appealed to the Court of Special Appeals and then to this Court, the cost of prosecuting an effective appeal may nullify the judgment of the trial court even if the trial court had awarded the maximum amount under the statute. Therefore, even where a landlord acts in good faith when appealing, if the tenant ultimately prevails the statute contemplates that judges have discretion to award attorney's fees relative to that appeal. The addition of deliberate delays and contemptuous behavior by the landlord, as in this case, would only add additional costs to the litigation and, unless recoverable, would further diminish the statutory remedy afforded to tenants.

Looking to another Maryland remedial statute for guidance supports our holding that "reasonable attorney's fees" under the Act may include post-judgment attorney's fees. The case of *Admiral Mortgage, Inc. v. Cooper,* 357 Md. 533, 745 A.2d 1026 (2000), is somewhat similar in that, albeit as dicta, we recognized that remedial statutes providing for attorney's fees might encompass post-judgment fees. In *Admiral Mortgage,* this Court answered the question of whether it was appropriate for a jury to determine the attorney's fee award pursuant to Maryland Code (1991, 1999 Repl.Vol.) § 3–507.1 of the Labor and Employment Article. Section 3–507.1 states:

" § 3–507.1. **Action to recover unpaid wages.**

(a) *In general.*—Notwithstanding any remedy available under § 3–507 of this subtitle, if an employer fails to pay an employee in accordance with § 3–502 or § 3–505 of this subtitle, after 2 weeks have elapsed from the date on which the employer is required to have paid the wages, the employee *may bring an action against the employer* to recover the unpaid wages.

(b) *Award and costs.*—If, in an action under subsection (a) of this section, a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount *not exceeding 3 times* the wage, and *reasonable counsel fees* and other costs." [Emphasis added.]

This Court, in *Admiral Mortgage,* held that § 3–507.1 was a remedial statute. In holding that attorney's fees should be awarded by the trial judge and not the jury, this Court stated in *Admiral Mortgage:*

"Attorneys' fees and costs are another matter. For one thing, *they may continue to accrue after the verdict is rendered, if post-trial motions or appeals are filed, so the jury cannot determine them definitively.* Attorneys' fees, moreover, when allowed, have traditionally been set by the judge, who is usually in a far better position than a jury to determine what is reasonable."

*Admiral Mortgage,* 357 Md. at 547–48, 745 A.2d at 1033 (emphasis added). *Admiral Mortgage* clearly implies that, in respect to remedial statutes, courts may allow post-judgment attorney's fees. *See also Friolo,* 373 Md. at 517–18, 819 A.2d at 364 (stating, "Unquestionably, the provisions for counsel fees in § 3–427(d) and § 3–507.1(b) are remedial in nature and should therefore be given a liberal interpretation. Courts must keep that in mind when deciding *whether* to award a fee.") (citations omitted). The Circuit Court in the case *sub judice* was in error in believing that he did not possess the power to award attorney's fees pursuant to § 8–203(e)(4) for work done on post-judgment motions and for work done in respect to appeals.

Federal fee-shifting cases provide additional support for the imposition of post-judgment attorney's fees in cases similar to the case *sub judice. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 558–60, 106 S.Ct. 3088, 3094–96, 92 L.Ed.2d 439, 451–53 (1986); *Garrity v. Sununu,* 752 F.2d 727, 738 (1st Cir.1984)(listing other United States Circuit Court decisions that have allowed the award of post-judgment monitoring fees under 42 U.S.C. § 1988); *Assoc. for Retarded Citizens of North Dakota v. Schafer,* 83 F.3d 1008, 1010–11 (8th Cir.1996)(recognizing that "it is generally accepted that prevailing plaintiffs are entitled to post-judgment fee awards for legal services necessary for reasonable monitoring of the decree"); *Stewart v. Gates,* 987 F.2d 1450, 1452 (9th Cir.1993)(providing for the award of attorney's fees "for certain post-judgment proceedings" pursuant to 42 U.S.C. § 1988); *Duran v. Carruthers,* 885 F.2d 1492, 1495–96 (10th Cir.1989)(upholding a trial court's post-judgment award of attorney's fees pursuant to 42 U.S.C. § 1988, for the monitoring of compliance with a consent decree regarding prison conditions and other post-judgment proceedings). Albeit that it involved administrative enforcement of a judicial decree, some of the rationale of *Delaware Valley, supra,* would equally apply to judicial enforcement of court judgments. The United States Supreme Court stated:

"Although it is true that the proceedings involved in Phases II and IX were not 'judicial' in the sense that they did not occur in a courtroom or involve 'traditional' legal work such as examination of witnesses or selection of jurors for trial, the work done by counsel in these two phases was as necessary to the attainment of adequate relief for their client as was all of their earlier work in the courtroom which secured Delaware Valley's initial success in obtaining the consent decree.... Instead, Delaware Valley filed suit to force the Commonwealth to comply with its obligations under the Clean Air Act to develop and implement an emissions inspection and maintenance program covering 10 counties surrounding two major metropolitan areas. To this end, the consent decree provided detailed instructions as to how the program was to be developed and the specific dates by which these tasks were to be accomplished.

"Protection of the full scope of relief afforded by the consent decree was thus crucial to safeguard the interests asserted by Delaware Valley; and enforcement of the decree, whether in the courtroom before a judge, or in front of a regulatory agency with power to modify the substance of the program ordered by the court, involved the type of work which is properly compensable as a cost of litigation under § 304....

. . .

"Given the common purpose of both § 304(d) and § 1988 to promote citizen enforcement of important federal policies, we find no reason not to interpret both provisions governing attorney's fees in the same manner. We hold, therefore, that the fact that the work done by counsel ... did not occur in the context of traditional judicial litigation does not preclude an award of reasonable attorney's fees under § 304(d) for the work done during these portions of the present action."

*Delaware Valley,* 478 U.S. at 558–60, 106 S.Ct. at 3094–96, 92 L.Ed.2d at 452–53 (citations omitted). Although it involved administrative enforcement, *Delaware Valley's* rationale is particularly pertinent to this case. The federal statutes dis-

cussed in that case had the purpose of ensuring private citizens "a meaningful opportunity to vindicate their rights." *Id.* at 559, 106 S.Ct. at 3095, 92 L.Ed.2d at 453. In this case, § 8–203(e)(4) similarly provides tenants with a meaningful opportunity to vindicate their rights against landlords improperly withholding tenants' security deposits. As post-judgment monitoring was needed to ensure the citizens' rights in *Delaware Valley*, post-judgment motions and appeals were necessary to ensure that petitioners could enforce their judgment in this case. The actions of respondent in this case illustrate how easily a landlord can prevent a tenant from vindicating the tenant's rights under the statute in the absence of an award for post-judgment attorney's fees. Thus, awarding attorney's fees for post-judgment motions and appeals can not only be reasonable, but may often be necessary.

Cases from other states additionally support our interpretation of § 8–203(e)(4), as several courts have held that similar attorney's fees provisions of security deposit statutes apply to post-trial motions and/or appeals. In *Martin v. Allen*, 193 Colo. 395, 566 P.2d 1075 (1977), the Supreme Court of Colorado reversed a lower court decision refusing to allow attorney's fees for an appeal. In holding that a tenant could be awarded attorney's fees for an appeal relating to that state's security deposit statute, the court stated that the Colorado statute:

"authorizes the award of treble the amount of a security deposit and reasonable attorney's fees when a landlord willfully fails to return the deposit within thirty days of termination of the leasehold. This statute, salutary in nature, is designed to assist tenants in vindicating their legal rights and to equalize the disparity in power which exists between landlord and tenant in conflicts over such relatively small sums. To deny attorney's fees to tenants who are forced to prosecute an appeal would undercut the objectives of these provisions. Landlords, by the simple expedient of an appeal, could effectively discourage tenants from obtaining legal redress. We, therefore, hold that tenants who are

successful on appeal are entitled to an award of reasonable attorney's fees."

*Id.* at 396, 566 P.2d at 1076.

The Supreme Court of Wisconsin, in *Shands v. Castrovinci,* 115 Wis.2d 352, 340 N.W.2d 506 (1983), held that the *actual recovery* of damages is the benchmark of success for a tenant in a landlord-tenant dispute pursuant to the Wisconsin's security deposit act. The provision in dispute in *Shands,* which is similar to the one in the case *sub judice,* stated:

> " 'Any person suffering pecuniary loss because of a violation by any other person of any order issued under this section may sue for damages therefore in any court of competent jurisdiction and shall recover twice the amount of such pecuniary loss, together with costs, including *a reasonable attorney's fee.*' "

*Id.* at 355 n. 2, 340 N.W.2d at 507–08 n. 2 (quoting Wis. Stat. § 100.20(5)(emphasis added)). The *Shands* court stated:

> "A tenant action brought under sec. 100.20(5) ... is not successful until he or she *has actually recovered damages and attorney fees.* The trial court's decision may have to be defended, or an adverse decision protested, in an appellate forum. The same purposes and policy interests we identified for the original action attach to the appeals process. To permit the recovery of attorney fees for successful appellate work is simply to recognize that an attorney's effort at that stage is as essential to the tenant's success as is an attorney's work at the trial court level. Furthermore, we recognize that, if attorney fees were not recoverable on appeal, landlords could defeat the statutory purposes by the simple expedient of an appeal, which will be prohibitively expensive for many tenants; similarly, tenants would have little incentive to pursue a meritorious claim on appeal where they had not prevailed at the trial court level. *In short, to deny attorney fees to tenants who need to pursue appellate review to enforce their rights would undercut the salutary objectives of the statute.*

"In light of these important interests, we find no reason to interpret sec. 100.20(5), Stats., as limiting the award of attorney fees to the original trial court litigation. Accordingly, we hold that a tenant who has suffered pecuniary loss because of a violation of Wis. Adm.Code Ch. Ag 134 shall recover reasonable attorney fees for appellate review undertaken to attack or defend a trial court's decision in the suit."

*Id.* at 359, 340 N.W.2d at 509 (emphasis added). *See also Schaefer v. Murphey,* 131 Ariz. 295, 299, 640 P.2d 857, 861 (1982)(awarding, in a landlord-tenant dispute, attorney's fees for an appeal as well as for trial work pursuant to a state statute allowing for the recovery of attorney's fees to the successful party); *see generally L'Esperance v. Benware,* 830 A.2d 675, 679 (Vt.2003)(although not the issue on appeal, the trial court included "post-judgment attorney's fees" for work performed on post-trial motions in a landlord-tenant dispute under Vermont's Consumer Fraud Act).

As in *Shands, supra,* denial of attorney's fees in the case at bar would diminish the remedial nature of § 8–203(e)(4). Petitioners were not successful in recovering the original judgment against the landlord until after the filing of several post-judgment motions. These post-judgment motions and the accompanying attorney's fees were necessary for petitioners to receive their full remedy under the statute, *i.e.,* recovery on their judgment against respondent. Without the post-judgment motions, and subsequent appeals by petitioners, respondent could have successfully thwarted § 8–203(e)(4)'s purpose merely by refraining from repaying the security deposit. Interpreting § 8–203(e)(4) to not include post-judgment attorney's fees might encourage similar actions by landlords in the future, thus further frustrating the remedial purpose of § 8–203(e)(4). As a result, we hold that the inclusion of post-judgment attorney's fees under § 8–203(e)(4) may be "reasonable" and in accord with § 8–203(e)(4)'s remedial purpose.

Respondent argues that a holding by this Court that § 8–203(e)(4) authorizes the awarding of post-judgment attorney's fees would be the practical equivalent of this Court adding the following emphasized language to the statute:

> "(e)(4) If the landlord, without a reasonable basis, fails to return any part of the security deposit, plus accrued interest, within 45 days after the termination of the tenancy, *or if a landlord fails to pay a judgment entered pursuant to this subsection, or if a landlord fails to respond to post-judgment discovery propounded by a tenant having a judgment entered pursuant to this subsection,* the tenant has an action of up to threefold of the withheld amount, plus reasonable attorney's fees."

Respondent's contention is misplaced. Our interpretation does not add language to the statute; it is merely an interpretation of "reasonable attorney's fees" in light of § 8–203(e)(4)'s remedial nature.

### III. Conclusion

In conclusion, we hold that although § 8–203(e)(4) is silent as to whether "reasonable attorney's fees" includes fees earned in the pursuit of post-judgment motions to collect the judgment from a landlord and appeals incurred in an effort to defend and collect a judgment in favor of a tenant, the remedial nature of § 8–203(e)(4) necessitates that a court has the power to include such fees in the award. Reasonable attorney's fees under § 8–203(e)(4) may include post-judgment attorney's fees in order to avoid rendering the remedy provided in § 8–203(e)(4) relatively meaningless.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND THE IS CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE ORDER OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY DENYING A SUPPLEMENTAL AWARD OF ATTORNEY'S FEES AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE RESPONDENT.**

RAKER, J., dissents.

RAKER, J., dissenting:

I respectfully dissent. I would affirm the judgment of the Court of Special Appeals and of the Circuit Court for Montgomery County, denying counsel fees in this case for noncompliance with a post-judgment discovery order. Respondent's abhorrent conduct was not a violation of the Security Deposit Act. Petitioner recovered counsel fees that were permissible under the Security Deposit Act. There is no other provision for the recovery of fees under that Act. The general rule regarding counsel fees applies—that a party may not recover attorney fees and expenses of litigation in his or her claim against the other party defendant unless it arises from specific statutory provisions or the contract of the parties. *See Bausch & Lomb v. Utica Mutual,* 355 Md. 566, 590, 735 A.2d 1081, 1094 (1999).

The majority holds that petitioner is entitled to counsel fees because, as a remedial statute, it must be construed liberally, and that liberal construction includes recovery of counsel fees to enforce the judgment. I disagree. The majority has expanded significantly the concept of fee-shifting, with no indication of where it will end.