NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 2 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

---

GERALD BOLLFRASS; FRANK
CZYZEWSKI, a married couple,

          Plaintiffs-Appellants,

  v.

CITY OF PHOENIX, a municipal
corporation; PHOENIX HOUSING
DEPARTMENT, named as The City of
Phoenix Housing Department, a federally
funded public housing program; DINA
FERNANDEZ, an individual; VERONICA
GRITTMAN; RICHARD G. GRITTMAN,
Jr., husband and wife; JULIE BOSSHART,
an individual; JAMES NAVARRETTE, an
individual; ANGELA HOGAN; MARK L.
HOGAN, husband and wife; KEON
MONTGOMERY; CINDY L.
MONTGOMERY, husband and wife;
WILLIAM EMMERSON; JANE DOE
EMMERSON, husband and wife; LESLIE
STOTLER; CINDY STOTLER, husband and
wife; JOHN AND JANE DOES, I - X,

          Defendants-Appellees.

No. 22-16485

D.C. No. 2:19-cv-04014-MTL

MEMORANDUM*

---

Appeal from the United States District Court
for the District of Arizona
Michael T. Liburdi, District Judge, Presiding

Argued and Submitted November 6, 2023
Phoenix, Arizona

---

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

Before: HAWKINS and COLLINS, Circuit Judges, and S. MURPHY,** District Judge.

Plaintiffs Gerald Bollfrass and Frank Czyzewski, a married couple, appeal the district court's judgment rejecting their various federal and state-law claims against the City of Phoenix and various city employees.[1] The district court dismissed several of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and later granted summary judgment to Defendants as to the remaining claims. Plaintiffs timely appealed. We have jurisdiction under 28 U.S.C. § 1291. Reviewing the district court's decisions *de novo*, *see Hoefler v. Babbitt*, 139 F.3d 726, 727 (9th Cir. 1998), we affirm in part and reverse in part.

1. The district court properly granted summary judgment to Defendants as to Plaintiffs' claims under 42 U.S.C. § 1983 alleging First Amendment retaliation.

To succeed on a claim of First Amendment retaliation, a plaintiff must show retaliatory intent—that is, he must establish that a defendant took some action against him and that his protected speech "was a substantial or motivating factor" driving that action. *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1019 (9th Cir. 2020). On appeal, Plaintiffs claim that three specific actions were retaliatory,

---

** The Honorable Stephen Joseph Murphy III, United States District Judge for the Eastern District of Michigan, sitting by designation.

[1] Plaintiffs also named the spouses of the individual city employees as additional defendants, but only for purposes of asserting derivative liability under Arizona law for the respective marital communities.

2

but they failed to present sufficient evidence of retaliatory intent to warrant a trial as to any of them.

On July 18, 2017, Czyzewski was fired by Defendant William Emmerson from his position as a Resident Assistant at Fillmore Gardens, a federally funded housing project in Phoenix that is managed by the City through Defendant Phoenix Housing Department ("PHD"). The firing occurred shortly after the police left Fillmore Gardens after being summoned in connection with a dispute between Czyzewski and a maintenance worker, Robert Olvera. Plaintiffs allege that Czyzewski's termination was actually in retaliation for an earlier July 12, 2017 email in which he complained to Defendant Dina Fernandez that the City's maintenance program was more focused on money than on "the well being of residents," one of whom had to be taken away in an ambulance due to faulty air conditioning. But as the district court correctly concluded, Plaintiffs presented no evidence that Emmerson was aware of that communication at the time he fired Czyzewski. Plaintiffs note that Fernandez was present when Emmerson fired Czyzewski, but that provides no non-speculative basis for inferring that Fernandez had communicated the substance of Czyzewski's email to Emmerson. Plaintiffs also point to Emmerson's July 21, 2017 letter to Bollfrass complaining about the latter's behavior towards PHD staff, but the district court rejected that argument on the ground that Plaintiffs had not cited "any authority to support their position that

3

the speech of a government employee's spouse can serve as the employee's own speech for the purposes of a First Amendment retaliation claim." Plaintiffs failed to address that point in their opening brief on appeal, thereby forfeiting any challenge to it. *See Brown v. City of Los Angeles*, 521 F.3d 1238, 1242 (9th Cir. 2008).[2]

Plaintiffs also contend that the June 25, 2018 eviction notice they received was in retaliation for their complaints to the U.S. Department of Housing and Urban Development and PHD concerning various issues at Fillmore Gardens. The eviction notice was issued four days after Czyzewski was arrested for having engaged in disorderly conduct at a meeting of the Fillmore Gardens Resident Council ("RC"). The disorderly conduct charge—to which Czyzewski pleaded guilty subject to a diversion agreement that suspended entry of judgment and sentence—arose from his approaching Donna Magaard, the secretary of the RC, with his fists raised in a threatening manner. The district court correctly held that no reasonable jury could find that Defendants had failed to carry their burden to show that "the eviction notice would have issued regardless of Plaintiffs' protected speech." Czyzewski's threatening conduct at the RC meeting was a serious matter, as confirmed by the statement and testimony of a representative from an outside

---

[2] Because Plaintiffs' opening brief also does not adequately present or develop any challenge to the district court's rejection of Plaintiffs' claim that Czyzewski's termination violated due process, we deem that point to be forfeited as well.

organization who was at the meeting to give a presentation on fair housing laws and who, after witnessing the incident, recommended that Czyzewski "be issued with a City of Phoenix health and safety violation that would terminate his residency." The undisputed transcript of Fernandez's and Defendant Julie Bosshart's meeting with police after the incident contemporaneously confirms their perception of the incident as serious, as does as an officer's comment that if he "was in [their] predicament, [he] would want prosecution." Even if Fernandez and Bosshart also expressed frustration with Plaintiffs' perceived rude and bullying behavior, no reasonable jury could find that the protected aspects of Plaintiffs' speech, rather than Plaintiffs' unprotected conduct, was the but-for cause of the eviction notice.[3]

Plaintiffs also assert that PHD's decision to audit Plaintiffs' financial information was in retaliation for their protected activity. The district court correctly held that Plaintiffs had failed to create a triable issue as to whether their

---

[3] Plaintiffs argue that, because an administrative panel set aside their eviction and determined that both Czyzewski and Magaard were at fault, Defendants should now be barred under the doctrine of collateral estoppel from contesting the propriety of the eviction notice. But under Arizona law, collateral estoppel only applies when an issue to be decided in a proceeding is "identical" to one decided in a prior proceeding. *Crosby-Garbotz v. Fell ex rel. Cnty. of Pima*, 434 P.3d 143, 146 (Ariz. 2019) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)). Even though the administrative panel ultimately concluded that eviction was unwarranted, that panel did not determine that eviction proceedings had been improperly *instituted*, nor did it address whether those proceedings were brought for a retaliatory purpose.

protected activity was a substantial and motivating factor for the audit. Undisputed evidence shows that Plaintiffs were audited only after they voluntarily provided "unredacted bank statements" to Defendant Angela Hogan to prove that they had paid their rent after receiving an automatically generated late-rent notice. The statements showed multiple unexplained deposits of cash that, unless accounted for, could have called into question Plaintiffs' compliance with their reporting obligations and their eligibility for continued residency at the public housing project. The fact that Hogan and PHD followed up to investigate this potentially serious violation of federal regulations does not, without more, give rise to any reasonable inference of retaliation. Plaintiffs point to Hogan's alleged statement, during their meeting with her, that Plaintiffs would be "held accountable for whatever you all do here," but that statement cannot reasonably be construed as referring to Plaintiffs' protected conduct.[4]

2. Plaintiffs also argue that Defendants discriminated against them because of their sexual orientation in violation of both the Equal Protection Clause and the Fair Housing Act. The district court correctly held that Plaintiffs had failed to plead sufficient facts to raise a plausible inference that any adverse action against

---

[4] Because Plaintiffs have failed to show that the district court erred in dismissing their § 1983 claims asserting substantive constitutional violations, Plaintiffs' *Monell* claims against the municipal Defendants necessarily fail. *See Nehad v. Browder*, 929 F.3d 1125, 1141 (9th Cir. 2019).

Plaintiffs was motivated by discrimination based on sexual orientation. To the extent that the complaint contains purely conclusory allegations of discriminatory intent, those are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Beyond that, the complaint alleges that, during their conversation with the police about the incident with Magaard, both Fernandez and Bosshart admitted mocking the way Czyzewski had raised his fists and that they responded affirmatively to an officer's suggestion that it "wasn't very masculine." The complaint also alleges that Fernandez stated that she thought Bollfrass's allegation of discriminatory treatment by Olvera was unsubstantiated.

Even if these sentiments might be considered offensive, Plaintiffs fail to plead sufficient facts to support a plausible inference that any specific adverse action taken by Defendants was motivated by discriminatory animus. *Iqbal*, 556 U.S. at 680–82. For example, the complaint pleads no facts that would support a plausible inference that, when Emmerson fired Czyzewski in July 2017, he harbored or acted upon any discriminatory motive. And with respect to the eviction notice, the complaint fails to plead facts that would provide any non-speculative basis for inferring that the notice was motivated by discriminatory animus rather than by the perceived seriousness of Czyzewski's behavior towards Magaard in the RC meeting. *See Iqbal*, 556 U.S. at 682 (stating that a plaintiff alleging discriminatory animus must plead facts that would plausibly exclude an

7

"obvious alternative explanation" for the adverse action).

3. Plaintiffs challenge the district court's dismissal, at summary judgment, of their claim for retaliatory threats of eviction under Arizona Revised Statutes § 33-1381. The district court dismissed this claim because it concluded that, as a matter of law, Plaintiffs were not entitled to any remedy for the alleged statutory violation. This was error.

Section 33-1381 provides that "a landlord may not retaliate by increasing rent or decreasing services or by bringing or threatening to bring an action for possession" after a tenant has engaged in specified protected activities. *See* ARIZ. REV. STAT. § 33-1381(A). The statute further provides that "[i]f the landlord acts in violation of subsection A of this section, the tenant is entitled to the remedies provided in § 33-1367 and has a defense in action against him for possession." *Id*. § 33-1381(B). Section 33-1367, in turn, provides for various remedies, including double damages, "[i]f the landlord unlawfully removes or excludes the tenant from the premises or wilfully diminishes services to the tenant by interrupting or causing the interruption of electric, gas, water or other essential service to the tenant." *Id*. § 33-1367. It also states that "[i]f the rental agreement is terminated the landlord shall return all security recoverable under § 33-1321." *Id*.

The district court concluded that Plaintiffs did not meet the eligibility conditions set forth in § 33-1367 for the forms of relief specified in that section.

8

Plaintiffs have forfeited any challenge to that ruling by failing to contest the point in their opening brief on appeal. *See Dilley v. Gunn*, 64 F.3d 1365, 1367 (9th Cir. 1995). However, the unavailability of this special-remedies provision in a given case brought under § 33-1381 does not mean that Plaintiffs do not "have certain actions and remedies available to [them] under *other* sections" of the Arizona Residential Landlord and Tenant Act ("ARLTA"). *See Schaefer v. Murphy*, 640 P.2d 857, 861 (Ariz. 1982) (emphasis added). Another provision of ARLTA broadly states that "[t]he remedies provided by [ARLTA] shall be so administered that the aggrieved party may recover appropriate damages." *Id*. § 33-1305. The district court's assumption that the remedies of § 33-1367 are exclusive is thus contrary to the language of ARLTA and would also create an anomalous situation in which § 33-1381 would expressly prohibit an entire category of conduct (such as retaliatory threats of eviction) for which ARLTA would then provide no remedy. Because the district court's only basis for dismissing the § 33-1381 claim was flawed, we reverse that dismissal and remand for further proceedings solely with respect to that claim.[5]

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

[5] Defendants ask us to affirm the dismissal of the § 33-1381 claim on the alternative ground that it fails on the merits in light of the insufficiency of the evidence of retaliation. However, the district court did not reach the issue of whether there are relevant differences between the § 33-1381 retaliation claim and the § 1983 retaliation claim, and we decline to address that issue in the first instance on appeal. We leave it for the district court to consider on remand.